McCrary Bros. *v.* Bristol Bank & Trust Co.

(*Knoxville.*    October 21, 1896.)

1. CONTRACT.  *Omitted proposition.*

The omission from a written contract of a proposition made during the preliminary negotiations, is presumed to have been intentional.  (*Post, p. 472.*)

· 2. MECHANICS' LIEN.  *Subcontractor's suit premature.*

A subcontractor who has performed his contract cannot enforce his lien for balance due him by sale of the property before the completion or acceptance·of the building erected thereon, when by the terms of their contract the balance due the contractor from the owner is not payable until completion and acceptance of the building; but he can recover against the contractor decree for his debt, and have declaration of his lien against the property, to be thereafter enforced by proper proceedings when the building has been completed and accepted, or a reasonable time for its completion shall have elapsed.  (*Post, pp.· 472–476.*)

Cases cited and distinguished: Green *v.* Williams, 92 Tenn., 220; Cole Mfg. Co. *v.* Falls, 90 Tenn., 466.

FROM  SULLIVAN.

Appeal from Chancery Court of Sullivan County. JOHN P. SMITH, Ch.

W. R. KING for McCrary Bros.

CURTIN & HAYNES for Bank, · etc., Co.

McAlister, J.    Complainants filed this bill in the Chancery Court of Sullivan County to enforce a mechanics' lien for the collection of $2,070, with interest.    McCrary Bros. were subcontractors, who furnished material and performed work under Crowell & Miller, who had the principal contract for the erection of a building for the Bristol Bank & Trust Co.    The Chancellor decreed in favor of complainants, and his decree was affirmed by the Court of Chancery Appeals.    The Bank & Trust Co. have appealed to this Court.    We have examined the record upon the original assignment of errors, and proceed to state our conclusions.    The cardinal facts found by the Court of Chancery Appeals are the following, to wit:    September 10, 1892, the Bristol Bank & Trust Co. entered into a contract with Crowell & Miller, a firm of contractors and builders, to furnish the material and do all the work required for the erection of a banking house in the city of Bristol.    They were to be paid therefor the sum of $11,486, payments to be made in designated amounts as the building advanced and the work should be approved by the architect.    The last payment of $2,486 was to be made when the entire work was finished according to the drawings and specifications, and accepted by the architect.    In the contract it is provided "that before each payment is required, the contractor shall give the architect good and sufficient evidence that the premises are free of all liens and claims chargeable to the

said contractor. The owners shall have the right to retain out of any payments then due or thereafter to become due, an amount sufficient to completely indemnify them against such liens or claims until the same shall be effectually satisfied, discharged, or canceled. . . .

"This contract," the Court continues, "in none of its clauses provides for paying Crowell & Miller, the original · contractors, any part of the sum they were to receive in stock of the bank. It is proved, however, by one of the. officials of the bank, that Crowell & Miller, in their bid for the contract, proposed to accept $2,600 of its paid-up stock, at par, as a payment *pro tanto*." The Court continues: "March 13, 1893, Crowell & Miller entered into a contract with McCrary Bros. (these complainants), under which the latter were to do all the carpenter work on the bank building. . . . For this work and materials McCrary Bros. were to receive $3,810. That contract concludes, 'and when the building is completed and accepted by the architect, they (McCrary Bros., subcontractors and complainants) are to be paid the further sum of $500 in cash and $600 of the paid-up stock of the banking company.'"

The first assignment of errors, originally filed to the decree of the Chancellor by the Bristol Bank & Trust Company, is that this suit was prematurely brought, and the bill should have been dismissed, because the balance owing to the original contractor is payable in bank stock, which, under the terms

of their contract with the bank, is not due until the building is completed and accepted by the architect, which, it is admitted, has not been done.

In respect of the first proposition embodied in this assignment, it suffices to say that the Court of Chancery Appeals do not find as a fact, that any part of the contract price due the original contractor is payable in bank stock. That Court, after quoting the contract *in extenso*, remarked: "This contract in none of its clauses provides for paying Crowell & Miller any part of the sum they were to receive in stock of the bank. It is proven, however, by one of the officials of the bank, that Crowell & Miller, in their bid for the contract, proposed to accept $2,600 of the paid-up stock, at par, as a payment *pro tanto*." But this feature of the bid, not having been embraced in the contract subsequently formulated between the parties, cannot be now considered, but is presumed to have been intentionally omitted from their written stipulations.

In respect of the prematurity of this suit, the Court of Chancery Appeals found as a fact, that the building was not completed according to the specifications of the contract between the bank and the original contractor when this suit was instituted. The Court did find that McCrary Bros., these complainants, had substantially completed their contract. It is argued that the subcontractor is charged with knowledge of the terms of the contract between the owner and principal contractor, and that he cannot

enforce payment in advance of the time when same is due by the terms of the principal contract. The balance due the original contractor is not due, because the building has not been completed and accepted, and hence the bill of the subcontractors to enforce their mechanics' lien is premature. It is also a part of the written contract between these subcontractors and Crowell & Miller, the original contractors, that complainants were not to get the balance owing to them "until the building is completed and accepted by the architect."

It is argued by learned counsel that it was not the intention of the Legislature to prevent the owner of property from contracting for the erection of a building on any terms except for payment wholly in cash, and that payable within the time allowed subcontractors to enforce liens. We think the position taken by counsel for appellant is sound, and is sustained by the authorities. The Court of Chancery Appeals was in error in holding that this question had been adjudicated adversely to defendants' contention by this Court in *Green* v. *Williams*, 8 Pickle, and in *Cole Mfg. Co.* v. *Falls*, 6 Pickle. This precise question did not arise in either case, and hence was not adjudicated, nor do the principles announced in those cases govern or control this case.

Mr. Phillips, in his work on Mechanics' Liens, p. 361, Sec. 205, in treating of subcontractors, says: "With them no priority of contract is deemed to exist between the owner and subcontractor. The con-

tractor of a building is not considered to be the agent of the owner, either for the employment of others or the acquisition of the necessary materials to perform his contract. But, at the same time, by a kind of equitable subrogation regulated by statute, the subcontractor and material man, being the parties meritoriously entitled to be paid, are allowed to intervene between the owner for whom the house was built and the person who had contracted to build it, and divert the course of payments, which would have passed into the hands of such contractor, to their own.''

The author, in further explanation of the policy and philosophy of the subcontractor's lien, on page 93, Sec. 58, says, viz.: ''The remedy adopted in those States which secure a lien on the land directly to the subcontractor for the entire amount of his claim, generally provide that the building erected shall be subject to the lien for the payment of all debts contracted for work done or materials furnished for or about the erection of the same.''

In discussing the rights secured by this statute, it has been said: ''The phraseology of this law proves that this lien, like all other analogous liens, is founded on contract, express or implied. And here, contrary to the rules as to other liens, the law gives a lien in favor of a subcontractor. On what principle is it founded? It must be on contract with the owner, either directly or indirectly, for it is only thus that one man can ever acquire

a claim upon the property of another.     And in this way the connection is plain.   The owner contracts with the builder to erect a house on certain terms, and the builder makes a subcontract with material men to supply the materials.    The chain of relationship consists of but two links, the second of which hangs by the first, and will bear no greater weight.    The subcontractor comes in by reason of his direct contract relation to the builder, and the right of lien of the former for his claim is *pro tanto* substitutionary to that of the latter.    As against the owner, the terms of the principal contract, and as against the builder the terms of the subcontract, limit and qualify the lien of the subcontractor, so as to prevent his claim from abating the terms of either contract.    The allowance of any lien at all to a subcontractor is a special privilege granted only in case of buildings, and it is not unreasonable to require him to look to the principal contract to ascertain whether it is such as to justify him in becoming the contractor under it.''

We approve the principles announced by this author, and hold that the subcontractor is affected with a knowledge of the terms and conditions of the contract made between the owner and original contractor.    The subcontractor is not entitled to an enforcement of his lien in such a manner as to defeat and destroy the fulfillment of the contract in accordance with its conditions and stipulations lawfully entered into by the owner with the principal con-

tractor. The owner had a perfect right to stipulate with the original contractor in this undertaking that the last payment of $2,486 should be made when the entire work was finished and done, according to the drawings and specifications, and accepted by the architect. Moreover, the contract of complainants with the original contractors expressly provides, viz.: "And when the building is completed and accepted by the architect they (complainants and subcontractors) are to be paid the further sum of $500 in cash and $600 of the paid-up stock of the banking company." So, it is obvious in any view of the case— the Court of Chancery Appeals having found that the building had not been completed by the principal contractors and accepted by the architects—the present bill, so far as it seeks a sale of the property for the enforcement of complainants' lien, is premature. Complainants are entitled, however, to have their lien on this property declared, and to a decree against the original contractors for the sum of $1,470 in cash, with interest from July 25, 1893, and also for the sum of $600, payable in bank stock, with its accretions and earnings, since the date last mentioned. But complainants will not be entitled to a decree for the enforcement of their lien on the property in question until said building has been completed, or has been accepted or occupied by the bank (unless with the assent of the subcontractors), or until a reasonable time shall have elapsed, or has elapsed,

for its completion, which facts may be shown by supplemental bill.

The decree of the Court of Chancery Appeals is therefore modified in the respect herein indicated, and the cause remanded for further proceedings. The costs of the appeal will be divided.