**KALT LUMBER COMPANY, Plaintiff, *v.* FREDERICK J. STERNER and Others, Defendants.**

Supreme Court, New York County. September, 1923,

**Liens — foreclosure of mechanic's lien — when owner is protected against liens of subcontractors as to payments made before copies of their liens were served on him — when owner entitled to judgment.**

Under the settled construction of the Lien Law, except in case of fraud, the owner of a building cannot be compelled to pay any greater sum for its completion than he had agreed to pay the contractor who abandoned the contract, and the validity of a mechanic's lien depending as it does upon the indebtedness of the owner of the building to the contractor, the burden rests upon the lien claimant to prove such indebtedness.

The rights of subcontractors and materialmen, as lienors, are measured by the rights of the general contractor under a building contract and said lienors are under the same obligation to prove performance and to the same extent that the general contractor would be, and a payment which was not due to it is not due to them.

Where in an action to foreclose a mechanic's lien it appears that the lien of plaintiff, a materialman, though filed on May eleventh was not served upon the owner of the building until May twentieth and that the liens of other subcontractors were subsequently filed and it is clear upon the evidence that after May eighth the owner and not the general contractor paid the men employed on the building and paid for materials as they came in, the owner is protected as to all payments made, at least up to May twentieth.

This course, though involving a radical departure from the contract as to payments thereunder, having been acquiesced in by the general contractor, who furnished the owner lists of the workmen employed on the job, afforded relief to the general contractor from the financial burdens which it had carried up to May eighth.

While certificates of payments issued by the owner under date of May twenty-ninth and June thirtieth were similar in form to those previously issued, they were not intended as evidence of amounts paid to the general contractor who did not sign them. The fact that the payments for which they purported to have been issued were not actually made to the general contractor but to the workmen employed on the building and for materials furnished by others, was persuasive that the owner in presenting said certificates to the general contractor merely intended to secure from it such an approval of the payments as would prevent subsequent objections from the contractor as to the amounts paid by the owner.

Judgment in favor of the defendant owner, who had expended more than the total amount of the original contract price plus the agreed price of extras, in order to complete the building. granted for a dismissal of the complaint and dismissing all liens filed against the property.

The plaintiff and the other lien claimants named as defendants who have interposed answers are entitled to personal judgments against the general contractor for the amounts claimed by them respectively.

ACTION to foreclose a mechanic's lien.

*Maurice B. Rich,* for plaintiff and defendant Anderson Brick and Supply Co., Inc.

*Samuel Alexander Langfur,* for defendants Queensborough Cabinet Co., Inc., and others.

MITCHELL, J. The plaintiff is a materialman and brings this action to foreclose its mechanic's lien, amounting to $489.87 and interest, against the premises No. 866 Lexington avenue, New York city. Various subcontractors who filed mechanics' liens against the premises are named as defendants in the action. The original contract price was $22,857 and the agreed price of the extras was $1,125, making a total amount of $23,982. The liens of the plaintiff and the Anderson Brick and Supply Co., Inc., were filed on May 11, 1922, but were not served upon the owner until May 20, 1922. The liens of the other subcontractors were filed subsequent to May 20, 1922. As the plaintiff and the other lien claimants must claim through the general contractor, the Woodward Construction Company, Inc., a payment which was not due to it was not due to them. They are under the same obligation to prove performance and to the same extent that the general contractor would be. Their rights as lienors are measured by the rights of the general contractor under the contract. *Van Clief* v. *Van Vechten,* 130 N. Y. 571, 580. A mechanic's lien depends for its validity upon the owner's indebtedness to the contractor, and the burden rests upon the lien claimant to prove the indebtedness. · *Brainard* v. *County of Kings,* 155 N. Y. 538. The defendant owner in this case expended more money than the total amount of the original contract price plus the agreed price of the extras in order to complete the building. The settled construction of the Lien Law is that except in the case of fraud (and none was proved here) the owner cannot, under any of its provisions, be compelled to pay any greater sum for the completion of a building than by his contract he has agreed to pay. *Crane* v. *Genin,* 60 N. Y. 127. The defendant owner claims that prior to the date of filing of plaintiff's notice of lien the general contractor abandoned the contract and requested him to finish it. If the contractor defaulted, the owner had the right to finish the work and make the payments necessary to complete it. The plaintiff and the other lien claimants contend that contractual relations between the owner and general contractor had not ceased on May 20, 1922, the date of the first notice to the owner of the filing of liens, and that there was no cessation of contractual relations between the two at any time. The owner is protected in all payments made at least up to May 20, 1922. If before this

date the general contractor notified the owner that it could not finish the contract and requested the latter to do so, there was a waiver of the three-day notice provided for in the contract, and the owner was justified in completing the building himself and disbursing the moneys necessary to effect that end. Counsel for the plaintiff in his brief very properly discusses the following question, which is decisive of the issue here: " Did the defendant Woodward Construction Company, Inc., continue to perform under its contract after May 20, 1922, and earn payments thereunder from the defendant owner, Frederick J. Sterner, after such date? " Sterner testified that in about the latter part of April or the early part of May Levin told him that he absolutely had no money in the bank; that he was practically ruined by a job that he had done at Fifty-fifth street and Madison avenue, and that it was impossible for him to go on with the work because he had no money; that he had used up the thousand dollars, and he could neither pay the workingmen nor anybody else. Sterner further testified that Levin told him: " You can do as you please; I have got no money, and if you want to get your job completed you can do it any way you like." Sterner's testimony as to this conversation is uncontradicted. The following excerpt from Levin's testimony corroborates in material particulars that of Sterner as to how payments were made by the latter after May 8, 1922: " Q. You say that some arrangement was made between you and Mr. Sterner with respect to disbursing the balance of the moneys due under the contract. Is that correct? A. No. Q. After April 28? A. I had a talk with Mr. Sterner — Q. He was to pay for the material as the material came and to pay for the laborers as they did the work; he was to pay all that? A. Yes. Q. And he did do that, didn't he? A. He did so far as I know. Q. Did he tell you why he insisted on that arrangement? A. I don't remember exactly what he said as to why. *He wanted to have the job finished.* Q. You say that these laborers that were on the job were your men? A. Yes. Q. They had worked for you before? A. Yes, sir. Q. But then they were working for Mr. Sterner, and he was paying them for their work every week. Is that correct? A. They were working on the job. Q. They were working there and Mr. Sterner was paying them? A. Yes. Q. You were not paying them any salaries, were you? A. No, sir. Q. They were doing this work from May 8 until the job was completed, in order to complete the work called for under this contract and plans and specifications. Is that correct? A. Yes, sir." It is clear that after May 8, 1922, the owner and not the general contractor paid the men employed on the building and paid for materials as they came in. This involved

a radical departure from the provisions of the contract, which, nevertheless, was acquiesced in by the general contractor, for the latter furnished to the owner lists of the workingmen employed on the job, so that the owner might pay them.   The responsibility of paying these men was theretofore discharged by the general contractor, and properly so, but at this point the owner stepped in and assumed the burden.   The very nature of this step is suggestive of the reason assigned for it by the owner in his testimony, viz., that Levin had notified him that the Woodward Construction Company was financially unable to proceed with the contract. As Levin testified, the owner " wanted to have the job finished." If the Woodward Construction Company had not notified the owner of its financial inability to proceed with the work it is difficult to understand the ready acquiescence of the general contractor in a plan which, disregarding the provisions of the contract as to payments, afforded it relief from the financial burdens which it had carried up to that time.   While the certificates of payment of May 29 and June 20, 1922, issued by the owner are similar in form to those which he had issued previously, I am convinced that the owner did not intend them as evidence of amounts paid to the general contractor.   The latter did not sign them, and a substantial reason for its refusal to do so is suggested by the fact that the payments for which they purport to be issued were not actually made to it, but to the workmen employed on the building and for materials furnished by others.   This fact is persuasive that the owner, in presenting these certificates to the general contractor, intended merely to secure from the latter such an approval of these payments as would prevent subsequent objections from it as to the amounts paid by him.   While, from the legal standpoint, the artlessness of the use of certificates of payment for this purpose may be conceded, it would not be an act of substantial justice to the owner to accord to their contents a technical significance at variance with the facts. The same consideration applies to the owner's letter to the general contractor dated May 29, 1922.   Judgment will be rendered in favor of the defendant Sterner, dismissing the complaint and dismissing the liens filed against the real property.   The plaintiff and the other lien claimants named as defendants, who have interposed answers, are entitled to personal judgments against the Woodward Construction Company, Inc., for the amounts claimed by them respectively and judgment will be rendered accordingly.   Submit proposed findings and decree.

Judgment accordingly.