NATIONAL SUPPLY CO.-MIDWEST v. WEAVER et al.*
JONES v. SAME.
OIL WELL SUPPLY CO. v. STANTON et al.

(Nos. 1327, 1335 and 1345; August 24, 1926; 248 Pac. 353.)

MINES AND MINERALS—PARTNERSHIP—JOINT VENTURE—CONSTITU-
TIONAL LAW—CONTRACTS—PROTECTION OF SUBCONTRACTORS—MA-
TERIALMAN'S LIEN.

1. That parties agreed to furnish machinery and material for
    digging oil well and leaseholder agreed to dig well and
    assign to them leases outside the land on which well was
    to be drilled *held* insufficient to establish partnership or
    joint venture.
2. Legislature doubtless has right to regulate contracts be-
    tween owner and an original contractor in a reasonable
    way, so as to protect subcontractors, if possible, without
    at same time infringing too much upon the right of con-
    tract.
3. Where principal contractor furnished materials to dig oil
    well, for which leaseholder agreed to assign certain leases,
    persons furnishing materials to contractor *held* not en-
    titled to lien, under Comp. St. 1920, §§ 4830-4839, since
    section 4838 limits owner's liability to consideration ex-
    pressed in contract, and sections 4830, 4831, provide that
    materialman's lien right is limited to that of original
    contractor.

*See Headnotes: (1) 40 CJ p. 1145 n. 1. (2) 12 CJ p. 951 n. 47.
(3) 40 CJ p. 1173 n. 7.

APPEAL from District Court, Converse County; CYRUS
O. BROWN, Judge.

Three separate actions, by the National Supply Com-
pany-Midwest and by Hoyle Jones against W. H. Weaver
and others, and by the Oil Well Supply Company against
M. B. Stanton and others, consolidated for the purpose
of trial. Judgment for defendants in each action, and
plaintiff in each action appeals. Argued together on ap-
peal.

*Frank England* and *Henry E. Perkins,* for appellant in No. 1327.

Plaintiff having perfected his lien, under 4830-4839 C. S., should have it enforced; defendant, Olsen, knowing that Weaver was owner of the lease and that the materials were purchased for use in drilling a well thereon, is estopped to deny the lien; 21 C. J. 1060; 27 Cyc. 331. The lien in this case was established under Chapter 128 of the laws of 1919, an act complete in itself and enacted for the protection of those furnishing material or labor, or both, for drilling and operating oil and gas wells. The materials were purchased upon Weaver's credit and the lien should be enforced.

*Joseph Garst,* for respondent in No. 1327.

The trial court found in Olsen's favor, upon evidence tending to support the findings which, under the rule, cannot be disturbed where the evidence is conflicting; Ketchum v. Davis, 3 Wyo. 164; Hester v. Smith, 5 Wyo. 291; Kimball v. Payne, 9 Wyo. 441; Riordan v. Horton, 16 Wyo. 363. Appellant claims to have furnished materials under an oral contract; 4830 C. S. relates to original contractors and 4831 C. S. to subcontractors; the relations of the parties are governed by contracts designated "BBB" and "CCC"; our contention is that both are contracts of conditional sale, and not contracts coming within the lien law; Weaver bears the relation of a materialman to Olsen, who is the lessee of lands, drilling an oil well thereon; the distinction between original and subcontractors is defined by 18 R. C. L. 911; Roebling Co. v. Humboldt Co., 44 Pac. 568; Bennett v. Davis, 45 Pac. 684; Calif. Co. v. Hotel Co., 108 Pac. 103. A statute restricted to a particular class cannot be extended to one not in that class to support a mechanic's lien; 18 R. C. L. 910. The right is statutory and persons claiming benefits must bring themselves within its terms; Caufield v. Polk, 46 N. E. 932. Materialmen in the second degree may, however, be provided for

by statute; 18 R. C. L. 911; 27 Cyc. 100; High Tower v. Bailey, 49 L. R. A. 255; Craig v. Higgins, 224 Pac. 668; Pacific Rolling Mills v. Co., 68 Fed. 966.

*James P. Kem,* for appellant, in case No. 1335.

The statute should be liberally construed in order to promote its objects; Sec. 5532 C. S. Wyo. 1920; Oster v. Rabeneau, 46 Mo. 595; Putnam v. Ross, 46 Mo. 337; De Witt v. Smith, 63 Mo. 263; Dugan Co. v. Gray, 114 Mo. 497, 21 S. W. 854; Joplin Works v. Shade, (Mo.) 118 S. W. 1196; Crane Co. v. Construction Co., (Mo.) 98 S. W. 795; Hicks v. Schofield, (Mo.) 25 S. W. 755; Sawyer Co. v. Clark, (Mo.) 73 S. W. 137; Faulkner v. Bridgett, (Mo.) 86 S. W. 483; Phillips on Mechanics' Liens, p. 10; Morrison v. Hancock, 40 Mo. 561. The Superior Tube Company furnished material to a contractor within the meaning of Sections 4830 and 4831 C. S. Wyo. 1920; Sec. 4859 C. S. Wyo. 1920; Western Co. v. Buckner, 80 Mo. Ap. 95; Wood v. Co., (Ind.) 123 N. E. 702; Co. v. Co., (Mo.) 152 S. W. 119; Co. v. Jones, 60 Mo. Ap. 1; Co. v. Jeffers, 79 Mo. App. 174; Huttig Co. v. Stitt, 218 Fed. 4; Jones v. Co., 86 Fed. 370; Becker v. Hopper, 32 Wyo. 237; Stark v. Petty Bros., (Ky.) 243 S. W. 50; Eaman v. Bashford, 4 Ariz. 199. The Superior Tube Company furnished material to an owner, part owner or agent within the meaning of Section 4830 C. S. Wyo. 1920; Co. v. Stone Mason Co., (Mo.) 69 S. W. 304; Dougherty Co. v. Churchill, (Mo.) 90 S. W. 405; Allen Assn. v. Boeke, (Mo.) 254 S. W. 858; Lumber Co. v. Greffet, (Mo.) 133 S. W. 113; Ward v. Nolde, (Mo.) 168 S. W. 596; Meat Co. v. Crane, 21 Ariz. 1; Phillips on Mechanics' Liens, 3d Ed., Section 65.

*Joseph Garst,* for respondent, in case No. 1335.

Liberal construction cannot operate to defeat legislative intent; Cattle Co. v. Board, 3 Wyo. 598; 4830 C. S. authorizes a lien for materials used in the construction of oil wells by virtue of a contract; the partnership of Stanton and Weaver is a distinct legal entity; Drucker v.

Wellhouse, 2 L. R. A. 328; Page v. Bank, 51 L. R. A. 463; Hess v. Lowrey, 23 N. E. 156; Heaton v. Schaeffer, 126 Pac. 797. The material was sold to Weaver and the partnership did not seem to be involved; 18 R. C. L. 911; Calif. Co. v. Co., 118 Pac. 103. The firm of Stanton and Weaver, being material men, Weaver, who sold to the firm of Stanton and Weaver, is a materialman of the second degree, and appellant, who sold to Weaver, is a materialman of the third degree; where there is a question whether claimant has taken the proper course, the rule of liberal construction obtains; 27 Cyc. 20; but there are qualifications of the rule; 18 R. C. L. 879; requiring a strict construction; Cline v. Co., 117 N. E. 509; Nanz v. Co., 47 L. R. A. 273; Putnam v. Ross, 46 Mo. 337. The contracts are conditional sales and not within the lien law; 24 R. C. L. 440. A contractor, within the lien law, is one who deals directly with the owner; 27 Cyc. 83; one who furnishes material, labor and superintendence for improvements on premises; Lumber Co. v. Churchill, 114 Mo. App. 578. The comparative value of labor, as compared with materials used, determines the question of an original contractor; 18 R. C. L. 911, and cases cited; all except original contractors are required to give notice; 4879 C. S. A partnership is a legal entity distinct from the persons comprising it; Page v. Bank, supra; Heaton v. Schaeffer, supra. It is apparent that the materials were sold upon the credit of W. H. Weaver and not upon the credit of any particular drilling work; plaintiff failed to maintain the burden of proof required to support a lien; Ketchum v. Davis, 3 Wyo. 164; Hester v. Smith, 5 Wyo. 291; Jackson v. Mull, 6 Wyo. 55; Conway v. Co., 6 Wyo. 468; 18 R. C. L. 922. A contractor, within the meaning of the lien law, is one contracting direct with the owner for a building or other improvement; 27 Cyc. 83 and cases cited. The trial court found generally for Olsen, upon evidence, and it should not be disturbed; Conway v. Co., 6 Wyo. 468. Appellant is not within the class

entitled to a lien; 18 R. C. L. 910; 27 Cyc. 100; in the absence of statute providing for materialmen in the second degree; Craig v. Higgins, 224 Pac. 668. Sections 4830 and 4831 C. S. do not provide a lien for submaterialmen or materialmen of the second degree; 18 R. C. L. 979.

*Robert N. Ogden, Jr.,* for appellant in case No. 1345.

1st.    Plaintiff and appellant is within the provisions of the statute with reference to such lien: (a) The notice (lien claim) meets all the requirements of Chapter 128, 1919 Session Laws of Wyoming—Sections 4830 to 4839, Wyo. Comp. Statutes, 1920; (b) Suit to foreclose such lien claim was commenced within the statutory time—Sec. 4834 Wyo. Comp. Statutes, 1920; (c) The petition contained all the requirements of the above cited statutes; (d) Plaintiff and appellant established by a preponderance of the evidence the allegations contained in the petition, including the allegations in the lien claim, by reference made a part of the petition.

2nd.    Stanton & Weaver, contracting with the owner to furnish materials for the improvement were original contractors, within the meaning of the statutes above cited, even though they were not "owners", within the statutory meaning; Sections 4830 and 4831, Wyo. Comp. Statutes, 1920 Ed., supra; Lumber Co. v. Nickell, (Tex.) 60 S. W. 450; Iron Wks. v. Riekenberg, (Idaho) 38 Pac. 651; Hearne v. Chillicothe Co., 53 Mo. 324; Whiteselle v. Texas Loan Agency, (Tex.) 27 S. W. 309; Matthews v. Wagenhaeuser Ass'n., (Tex.) 19 S. W. 150; Ambrose Mfg. Co. v. Gaper, 22 Mo. App. 397; Lumber Co. v. Bldg. Co., (Mo.) 114 S. W. 77; 3rd.    The improvement being calculated to develop that part of the entire Irvine Oil Structure, belonging to Olsen, and defendants Stanton and Weaver purchasing one-half thereof from him, even though the materials happened to be delivered on lands of Olsen, plaintiff and appellant is entitled to miner's lien on the entire property and improvements, as one furnishing ma-

terials to the owners; McIntyre v. Mac Ginniss, (Mont.) 108 Pac. 353; Berentz v. Belmont Co., (Calif.) 84 Pac. 47; Salt Lake Hardware Co. v. Co., 157 Fed. 632; Phillips v. Co., (Idaho) 72 Pac. 886; Ball v. Oil & Gas Co., (Kan.) 216 Pac. 422; Co. v. Mfg. Co., (Colo.) 153 Pac. 765; Wyo. Comp. Statutes, Sections 4830 to 4839, incl.

*Joseph Garst,* for respondent, in case No. 1345.

The finding made in favor of Olsen should not be disturbed; Jackson v. Mull, 6 Wyo. 55. 4830, 4831 C. S. gives the right of lien to persons performing labor or furnishing material to a contractor or subcontractor; a contractor is one dealing direct with the owner; Ambrose Co. v. Gaper. Persons, other than an original contractor, must give ten days' notice before filing a lien; 4879 C. S.; compliance with the statutes is necessary; 27 Cyc. 110; Herman v. Walton, 36 Mo. 620; Wyman v. Quayle, 9 Wyo. 331; Burnside v. O'Hara, 35 Ill. Ap. 150. Contract "CCC" is not of the kind contemplated by Chapters 307 and 308 C. S. The lien contemplates a building and construction contract as distinguished from a conditional sale contract; building and construction contracts have been defined by the authorities; 9 C. J. 693; Carey Lumber Co. v. Jones, 58 N. E. 347; Woods v. Lumber Co., 123 N. E. 702; Daugherty Lumber Co. v. Churchill, 114 Mo. Ap. 578.

BLUME, Justice.

The facts of the three cases before us are substantially alike. They were consolidated in the District Court for the purpose of trial and were argued together in this court, and may be disposed of in one opinion.

The facts are about as follows: J. A. Olsen, defendant below and respondent here, prior to June, 1924, was the holder of leases on about ten to twelve thousand acres of land near Irvine, in Converse County, Wyoming, on what was known as the Irvine Structure, for the purpose of testing it for petroleum oil. Being ready to drill, he en-

tered into a contract on June 27, 1924, with the defend-
ant M. B. Stanton—said Stanton apparently acting on be-
half of himself and the defendant W. H. Weaver.  J. A.
Olsen is named as the first party in said contract and M.
B. Stanton as the second party.  Under this contract, M.
B. Stanton agreed to sell to Olsen a standard oil rig, com-
plete with tools, free of incumbrances and with merchant-
able title; and at his, Stanton's, expense, to move said
rig to and erect it at the site of the well to be drilled by
Olsen.  The latter agreed to drill a well on the Northeast
Quarter of Section 21, Township 31, North of Range 70
West, a part of said Irvine Structure, to the depth of 2700
feet, unless oil or gas was found in paying quantity at a
less depth; and also to assign to Stanton (1) the lease on
80 acres of said Northeast Quarter, outside of the 80 acres
on which the well was to be drilled, and (2) the leases on
2,000 additional acres surrounding said quarter section.
On July 10, 1924, an additional contract was made be-
tween M. B. Stanton and W. H. Weaver, as first parties,
and J. A. Olsen, as second party.  This contract refers to
the contract of June 27, 1924, and in it Stanton and Weav-
er agreed "to sell and furnish" at their own expense to
said Olsen, at the well heretofore mentioned, and as need-
ed, all necessary, proper and sufficient casing required in
the drilling of such well.  In consideration thereof Olsen
agreed to immediately assign and convey to Stanton and
Weaver an undivided one-half interest of the remaining
leases held by Olsen on the Irvine Structure.  Olsen
drilled the well as agreed, and he thereupon received a
bill of sale for the property sold, or agreed to be furnished,
by Stanton and Weaver, pursuant to the contracts afore-
said, although it is not quite clear as to whether or not the
bill of sale conveys the casing mentioned in the contract
of July 10, 1924.  This bill of sale had been placed in es-
crow with a bank at Casper, Wyoming, and was delivered
to Olsen by said bank upon the completion of the well

aforesaid. No oil or gas in paying quantities was found in the well.

Olsen testified that Weaver, or Stanton and Weaver, were dealers in supplies necessary for the purpose of drilling the well aforesaid, and that he thought that the casing used in the well came directly from them. It was, however, furnished by the plaintiffs and appellants herein on the order of Weaver, or of Stanton and Weaver, and they also furnished some other supplies on like orders. Their combined claims amount to $14,823.91. While the facts are not quite clear under the testimony, and are not fully explained in the briefs, it seems that this material was furnished either in connection with the contract of June 27, 1924, or in connection with the contract of July 10, 1924 hereinbefore mentioned, or in connection with both of said contracts—most of the material furnished consisting of casing. Each of the plaintiffs and appellants filed notice of a lien, for the material so furnished, in the office of the County Clerk of Converse County, Wyoming, within the time required by law, and brought these actions to recover judgment, for the amount of their respective claims, from W. H. Weaver and M. B. Stanton, and to foreclose their liens, for the material so sold by them, on the lease-hold interest of Olsen, Stanton and Weaver, and on the personal property used in connection with the drilling of the well. Stanton was not served with notice of the pendency of the actions and did not appear. A judgment was rendered in each case denying the right of of a lien and foreclosure thereof, though granting a recovery from W. H. Weaver personally. From such judgments the plaintiffs have appealed. The only respondent who has filed a brief herein is J. A. Olsen.

Appellants claim their respective liens under and by virtue of chapter 128 of the Session Laws of 1919, now embraced within sections 4830 to 4839 W. C. S. 1920, passed for the special purpose of giving a lien for labor and material furnished in connection with the drilling of

oil wells. The respondent J. A. Olsen claims that the material, for which the appellants ask a lien, was sold to him by Stanton and Weaver under a conditional-sale contract and that, accordingly, no contract relation, direct or indirect, existed between him and either of the appellants. Without passing upon that point, we shall consider the claim of the appellants, which is to the effect that Stanton and Weaver were either the original contractors, within the contemplation of the statute above cited, or were the agents of Olsen by reason of the joint enterprise in attempting to discover oil. We do not apprehend that it would be claimed—at least by most of the counsel for appellants — that appellants would have any greater rights if Stanton and Weaver were considered agents in the latter sense rather than original contractors—an original contractor frequently being considered the agent for the owner for certain purposes. No partnership or joint adventure has been established. See Brenner Oil Co. v. Lumber Co., 108 Okla. 257, 236 Pac. 44. No intention of the parties to create such relation appears. Some of the briefs of counsel for appellants assume facts that are disputed by the evidence—for instance that Olsen knew that the material was not paid for; that Olsen and Stanton and Weaver expected to work together in selling "acreage," and that Olsen merely used Stanton and Weaver for the credit which the latter were able to furnish. While it is true that both Olsen as well as Stanton and Weaver were interested in the discovery of oil in the well to be drilled by Olsen, that fact alone could not make them partners. Other parties who had adjoining lands also were interested. Stanton and Weaver had no interest in the particular eighty acres of land on which the well was drilled; they had no interest in the personal property used in connection with the well, or in the well itself, upon the completion of the contract with Olsen. Whatever each of the respective parties undertook, in accordance with the contracts, was along a separate line. Olsen was to drill the

well and pay his own expense and Stanton and Weaver were to furnish the material upon their own responsibility.   No such facts as, for instance, appear in the case of Ball v. Red Square Oil & Gas Company, 113 Kan. 763, 216 Pac. 422, are present here, in which case, further, the right of a lien was not disputed, but simply the extent of it.   Hence we shall, for the purposes of this case, simply assume with most of the counsel for appellants, that Stanton and Weaver were the original contractors under the contracts with Olsen heretofore mentioned, and determine whether or not appellants are entitled to a lien under that theory.

It has been decided in Missouri, from which our general mechanic's lien law was taken, that the right of a lien on the part of subcontractors, as the appellants in this case are claimed to be, depends upon a contract existing between the owner and the original contractor.   Halliwell Cement Co. v. Elser, 156 Mo. App. 291; 137 S. W. 626; E. R. Darlington Lumber Co. v. Pottinger, 165 Mo. App. 445, 147 S. W. 179.   The necessity and importance of such contract relation is emphasized by the provisions of section 9 of chapter 128 supra (sec. 4838 W. C. S. 1920), which limits the liability of the owner to the consideration expressed in the contract, at least if such contract is entered into in good faith.   That section reads as follows:

"Nothing in this act shall be construed to fix a greater liability against the owner of the land, or lease hold interest therein, than the price or sum stipulated to be paid for such materials, machinery or supplies furnished, or labor performed."

This section is not a part of the general mechanic's lien law of this state, and we express no opinion as to a case arising under that law.   The general rule, which appears to be applicable in the case at bar, is stated in 40 C. J. 147, 148, as follows:

"A subcontractor or other person not contracting directly with the owner, is charged with notice of, and bound by, the terms of the contract between the owner and contractor relating to the mode and terms of payment, and his contract with the contractor is presumed to have been made with reference to such terms. Where the mode of payment provided for in the original contract is inconsistent with the existence of a lien in favor of the subcontractors and others, they can have no lien unless the owner has, by his conduct, deprived himself of the right to set up such provisions against the lien claimed."

In Jones on Liens, (2nd ed.) par. 1289, the rule is stated to be as follows:

"The subcontractor is bound by the terms of the contract between the owner and the contractor. The right of the subcontractor to any lien arises from the contract or consent of the owner to his performance of the services which are the foundation of the lien. The owner contracts with a builder for the construction of a house and by so doing consents to the services of laborers or material men employed by the builder, but the contract with the builder is in such case the basis of the indirect contract with those whom the builder employs; and it is only reasonable to require them to look to the principal contract and to be bound by its terms. If that contract provides that payment shall be made in property or services, the subcontractor is bound by the arrangement. If the contract provides for the taking of the owner's note and mortgage for his indebtedness under the contract, a subcontractor cannot claim a lien inconsistent with the exercise of such right."

Phillips on Mechanics' Liens, in section 58, states a similar rule, and in section 62 states as follows:

"The lien, or right of the subcontractor and others, discussed in the preceding section, is always in strict subordination to the terms of the original contract between the owner and his immediate contractor. All such persons, in the absence of fraud, are presumed to have notice of the existence of such contract, a knowledge of its terms and of the rights and obligations of parties thereunder. Its terms are conclusive against them so far as any claim upon the owner or right of lien upon his premises is concerned.''

In the case of Campbell & Kennedy v. Scaife, 1 Phila. 187, the principal contractor agreed to erect a house and to receive payment therefor partly in merchandise and partly in money. The court held that the contract was binding upon the subcontractors, and that the rights of lien on the part of the latter is limited accordingly, the court saying in part:

"The justice of this limitation of the right of the subcontractor is very plain, for if it were otherwise, no man could ever build a house with any certainty as to the cost of it, unless he employed all of the workmen and provided all of the materials himself. He might find it built of an entirely different character than that contracted for, and yet have to pay the subcontractor, though the builder could have no claim upon it. He might contract for a house at $1,000 and find liens established against it for $2,000. If such were the case, no prudent man would make a contract to have a house erected except with a builder who had ample means to secure him against liens, and such men only could obtain the most desirable contracts. The allowance of any lien at all to a subcontractor is a special privilege, granted only in case of buildings, and it is not unreasonable to require him to look to the principal contract to ascertain if it is such as to justify him in becoming a contractor under it. The argument that the law and the principal contract make the builder

the agent of the owner, proves nothing. Suppose the fact to be so, still his agency is only special, limited by the terms of the contract.''

In the case of Orwell v. Snyder & Dicus, 174 Ill. App. 239, it was held that one who furnishes materials to a contractor and claims a lien, must show that money is due from the owner to the contractor, before he can obtain any judgment under the mechanic's lien act, and that where a contractor signs a contract with the owner, a dentist, that the price for the erection of the building will be paid in dental work, and the owner does not refuse to fulfill the agreement, a subcontractor who furnished material can not have a lien, since he is presumed to have contracted with reference to the terms of the original contract and is bound thereby. The syllabus in the case of Kilbourne, Jenkins & Co. v. Jennings & Co., 38 Ia. 533, is as follows:

''In an action against the owner of real estate by one who has furnished materials for the erection of a building thereon, the owner, if guiltless of misrepresentation, is not liable beyond the terms of his contract with the builder. Under an agreement to pay in real estate, he cannot be required to pay in money.''

In the case of Jones & Magee Lumber Co. v. Murphy, 64 Ia. 163, 19 N. W. 898, the principal contractor agreed to erect a building for $1600; $500 to be paid in advance, $300 on the completion of the work, and the balance to be paid by note and mortgage. The court held the contract binding upon a subcontractor, holding that no lien could be had for more than $300, and stating in part:

''Now, while it may be that a mere stipulation on the part of the contractor, not to claim a mechanic's lien, would not preclude subcontractors from doing so, we

think that they are precluded, where the contractor stipulates at the outset for a mode of payment inconsistent with a mechanic's lien. The contractor might stipulate for payment in labor or some specific property other than money. If he should do so, such contract would be inconsistent with a mechanic's lien on the part of a subcontractor."

In the case of Ewing, Jewett & Chandler v. Folsom, 67 Ia. 65, 24 N. W. 595, Folsom, the owner, contracted with the original contractor to make the last payment due on the contract by an account for medical services performed for the former. The court held that such contract was binding upon the subcontractor, the court saying in part:

"The parties to the building contract having agreed that the account for medical services should be credited upon the last installment to Folsom, it was payment thereon protanto. * * * A contract may provide for payment in money or property. * * * If the parties had settled by agreement that the account for medical services should be deducted from the last installment to be paid Folsom, the sum due him was the amount remaining after deducting the account from the sum remaining unpaid under the contract. The plaintiffs (subcontractors) are entitled to a lien for no greater sum."

In the case of Maddux v. Buchanan, 121 Va. 102, 92 S. E. 830, the original contractor defaulted and abandoned the work. The contract provided that in such case the owner might complete the building at the expense of the original contractor. In accordance with that contract, the owner completed the building, the expense exceeding the amount due to the original contractor. The subcontractors claimed a lien for labor and material furnished to the original contractor. The court held that they were not entitled to such lien, saying in part:

"Laborers and material men are favored by the statute, but not to the extent of requiring the owner of the property to pay the same bills twice; once to the builder with whom he has contracted and again to parties with whom he has no contractual relations. Our present mechanic's lien laws deal fairly with both the owner and the subcontractor, requiring the owner, after notice, to withhold from the general contractor enough to pay the subcontractor, provided, however, 'the same does not exceed the sum for which the owner is indebted to the general contractor at the time the notice is given.' * * * The subcontractor will generally be as well situated as the owner to determine whether the general contractor is solvent. To do more than our statute has done in relieving the subcontractor in this respect, would be to make the owner of a building the guarantor of all the bills incurred thereon by the general contractor. This would unjustly, if not unconstitutionally, abridge the right of contract. * * * An owner has the right to make just such a contract as was made in this case, without regard to subcontractors. The authorities already cited emphasize that the principle that a subcontractor can have no legitimate claim upon the owner, except under and by virtue of the statute. And while it would not be competent under what we regard as the better, though not the universal, rule, for an owner to defeat the statutory rights of a subcontractor by a stipulation in the general contract against liens, or to assist the general contractor in placing a bona fide asset beyond the reach of his creditors by any subterfuge embodied in the terms of the general contract, the settled general rule is that a subcontractor is charged with notice and bound by the terms of the general contract, and that this rule applies especially to the mode and terms of payment agreed upon between the owner and the general contractor."

See also, along the same general line of reasoning, McCrary v. Bristol Bank, 97 Tenn. 469, 37 S. W. 543; Herrel

v. Donovan, 7 App. D. C. 322; Dore v. Sellers, 27 Cal. 588; Calt Lumber Co. v. Sterner, 121 Misc. Rep. 505, 201 N. Y. Sup. 567, where it was held that the rights of lienors are measured by the rights of the general contractor under the contract; that the mechanic's lien depends upon its validity upon the owner's indebtedness to the contractor, and that the burden rests upon the lien claimants to prove the indebtedness.

In the case of Frost v. Falgetter, 52 Nebr. 692, 73 N. W. 12, the owner entered into a contract with the original contractor for the erection by the latter of a building for the former, payment therefor to be made by conveyance of a certain lot to the original contractor. The court held that the contract was binding upon subcontractors and that they could have no lien. The case is identical in principle with that in the case at bar. In the later case of Coates Lumber and Coal Co. v. Klaas, 102 Nebr. 660, 168 N. W. 647, the Frost case was overruled, the court, however, apparently doing so on the ground that the Nebraska statute giving a mechanic's lien, contained no limitation that liens could not exceed in amount the contract price agreed upon between the owner and the contractor; the court evidently thinking that, with a provision in the law substantially like that of section 9 of chapter 128, supra, the rule should be otherwise. A reference to the point now under discussion was made by the court in the case of Jones v. Hotel Co., 86 Fed. 370, 388, 30 C. C. A. 108. The question before the court was as to whether or not the Ohio law, granting mechanics' liens to subcontractors, was constitutional, and the court, holding that it was, said in the course of the opinion:

"If he pay in advance or contract to pay in property, or by an exchange of paper, and his contractor be dishonest or insolvent, he may find himself involved by the contractor's debts for labor or supplies."

The remark was obiter and was further made in view of a statute which gave subconstractors a lien regardless of the terms of the contract between the owner and the original contractor, and there are a number of cases which seem to hold that under statutes of that character the terms of the contract do not control, and that a subcontractor has a lien without regard to the state of the account between the owner and the principal contractor. How far that principle can be carried constitutionally has not been directly decided in this state and need not be determined now, though, doubtless, the legislature has the right to regulate contracts between an owner and an original contractor in a reasonable way, so as to protect subcontractors, if possible, without at the same time infringing too much upon the right of contract. But we are not here dealing with a statute of that character, but with a statute which expressly recognizes the validity and the controlling character of the contract between the owner and the principal contractor, and in view of that fact the authorities heretofore cited would seem to be applicable to, and decisive of, the case at bar, and the principle therein announced is probably applicable, at least in all cases where the statute does not clearly grant a lien to subcontractors without reference to the terms of the original contract. Kelleher v. Roedal, 154 Wisc. 456, 143 N. W. 193.

Our conclusion is strengthened by, and the legislative intention becomes clearer under, another limitation contained in the same law under which appellants claim a lien. Section 1 of chapter 128 supra, (Sec. 4830 W. C. S. 1920), provides:

"Every person ** who ** furnishes ** material * for ** drilling ** any gas wells, oil wells or other well ** by virtue of any contract express or implied with the owner, part-owner or lessee of any interest in real estate ** and

every person who shall as subcontractor, or material man, furnish * materials * to such original or principal contractor or any subcontractor in carrying forward, performing or completing such contract, shall have a lien to secure the payment thereof, upon said gas well,'' etc.

While this section gives a lien to both contractor and subcontractor, including material man (without deciding whether a material man is strictly a subcontractor), section 2 of the same chapter (sec. 4831 W. C. S. 1920) makes a further and special provision for such subcontractors, including material men, and contains a limitation as to their rights, said section providing as follows:

''Any person ** or material man who shall furnish such materials ** or supplies to a contractor or subcontractor ** shall have a lien upon the land or leasehold or other interest therein ** and upon said oil well, gas well *** *in the same manner and to the same extent as the original contractor,* for the amount due for such materials, **.'' (Italics are ours.)

Construing the two sections set out together, it would seem that the right of a lien of a subcontractor, including a material man, is limited ''in the same manner and to the same extent'' as the right of a lien of an original contractor. This limitation is contained in section 7466, Compiled Statutes of Oklahoma of 1921, and has been construed in several cases. In the case of Christy v. Union Oil & Gas Co., 28 Okla. 324, 114 Pac. 740, the contract between the owner and the original contractor provided that the latter should not be entitled to any money unless he completed the contract, which he failed to do but abandoned the contract. The court held that in view of the limitation above mentioned, and nothing being due to the contractor, a subcontractor under him could not have a lien; that where there is no primary liability to the orig-

inal contractor, there is not, under this limitation, any liability to a subcontractor. This decision was approved and followed in the cases of Brenner Oil Co. v. Lumber Co. 108 Okla. 257, 236 Pac. 44, and Cameron Refining Co. v. Jerman, 110 Okla. 272, 238 Pac. 437. In the first of these two cases there was a contract similar to those in the case at bar. The Brenner Oil Company owned an oil and gas leasehold. Desiring to have some one else drill an oil well on the land, it entered into a contract with one Simons to drill such well, agreeing to give Simons an undivided one-half interest in the leasehold, said half interest, however, not to be turned over unless Simons fully complied with his contract, which he failed to do, but abandoned the work. Ferguson was a subcontractor under Simons. The main question in the case was as to whether or not Ferguson was entitled to a lien for the material and other things furnished by him. The court held that he was not, because the primary liability to Simons failed. In the second one of those cases, the Cameron Refining Company owned an oil and gas lease. One Gay entered into a contract with said company to dig a well on the land 150 feet deeper than it was, for which, if successful, he should receive the sum of $2500, but in the event he was not successful, he should receive nothing. He was not successful and nothing was due him. Jerman was a subcontractor under Gay and claimed a lien. The court held that he was not entitled to it, because the primary liability failed. In the case of Cudworth v. Bostwick, 69 N. H. 536, 45 Atl. 408, the court discusses a statutory limitation similar to that above mentioned, and reached the same result, the court holding that where there was nothing due to the principal contractor, a subcontractor could have no lien.

It is difficult for us to see how we can, particularly in view of both of the statutory limitations above mentioned, come to a conclusion different from that reached in these cases, since that would, it seems to us, mean that we would

have to entirely ignore these limitations, which we cannot do. It has been intimated, and it is doubtless true, that contracts like those involved in the case at bar, are not infrequent in oil territory. If oil had been found in paying quantities in the well drilled by Olsen, Stanton and Weaver undoubtedly would have profited by the contract in an unmeasurable degree, and it would have been exceedingly advantageous to them. They speculated for immense profits and took their chances with Olson. That these profits were not realized was no fault of Olsen. It may often happen that a man, placed in the same position as Olsen, would not be able to drill an oil well unless he could enter into a contract as Olsen did in the case at bar, and we see no reason, in view of our legislation, why we should not uphold such contract as against the claims of subcontractors. It may be that where payment for material, as in the case at bar, is to be paid for in property, rather than in money, the property should be kept in the control of the owner, primarily for the benefit of subcontractors, and that, unless this is done, the owner should be held responsible to the extent of the value of such property. We need not, however, determine that point, because, if we read the testimony in the case and understand the position of counsel for the appellants correctly, the property, agreed to be conveyed by Olsen to Stanton and Weaver, had only a speculative value during the time of the drilling of the well in question, and ceased entirely to have any practical value when no oil was found in the well that was actually drilled. In any event, it does not appear that the property had any value. We think, accordingly, that the judgments in the court below should be affirmed, and it is so ordered.

*Affirmed.*

Potter, C. J., and Kimball, J., concur.