Eugene F. ARNOLD, doing business as
Arnold Drilling Company, Appel-
lant (Plaintiff below),

v.

AMERICAN PIPE & SUPPLY CO., a partner-
ship, Rocky Mountain Rental Tool, Inc., a
corporation, Appellees (Defendants below),

Butane Power and Equipment Company,
a corporation (Defendant below).

No. 3469.

Supreme Court of Wyoming.

May 9, 1966.

Harold L. Mai, Cheyenne, for appellant.

B. J. Baker of Brown, Healy, Drew, Apostolos & Barton, Casper, for American Pipe & Supply Co.

J. F. Mahoney, Casper, for Rocky Mountain Rental Tool, Inc.

Before PARKER, C. J., and HARNS-BERGER, GRAY, and McINTYRE, JJ.

PER CURIAM.

Plaintiff, the owner of an oil and gas leasehold estate, filed a complaint alleging that defendants claimed liens on the land covered by the lease, which liens were recorded and unsatisfied, but void, and he prayed his title in the premises be quieted. Defendants answered separately and counterclaimed, each asking the foreclosure of its respective lien. The cause was tried without a jury and the court found against plaintiff on the complaint and in favor of appellees on the counterclaims, awarding judgment of foreclosure on each of the liens, from which judgment plaintiff appeals.

The axial facts are undisputed, that the plaintiff-owner of the oil and gas leasehold estate paid the drilling contractor the full contract price of the well following its completion and appellees who had furnished materials for the well thereafter within the statutory time limit each filed a notice and claim of lien upon which the foreclosure was sought.

The sole question, one of law, is stated by appellant: "Whether the leasehold estate and well of owner may be subject to materialmen's liens for amounts owing from the principal contractor to materialmen when owner paid the principal contractor in full, pursuant to the drilling contract, after the well was completed * * * prior to receiving notice from materialmen that they had not been paid by the principal contractor."

Plaintiff concedes that the Wyoming mechanics' lien statutes confer on materialmen and laborers a direct, absolute lien, irrespective of the right of the principal contractor to a lien and to the state and condition of the account of the owner and principal contractor. However, he predicates his appeal on the contention that in contrast thereto Wyoming's mineral-lien laws are of a subrogation type, and he in-

sists that a person to whom a general contractor owes a debt on an oil well is limited in his lien rights to the amount due from the owner to the general contractor at the time a lien is filed, emphasizing portions of §§ 29–30, 29–39 (originating in S.L. of Wyoming 1919), 29–40, 29–43 (originating in Laws of Wyoming, 1869), 29–50, 29–52, and 29–58 (originating in Laws of Wyoming, 1871), W.S.1957.

The legislature might do well to re-examine c. 3, title 29, W.S.1957, deleting nonessential and redundant material and correlating the remainder. Nevertheless, this circumstance does not alter the interpretive result when the history of the legislation is kept in perspective. The lien statutes concerning "mines, quarries, oil, gas or other wells" originated in the Laws of Wyoming, 1869, and were concerned with direct liens. Subsequent 1871 changes did no more than broaden this direct-lien coverage and additionally provide that subcontractors, and others, who had furnished material, etc., and not been paid might so notify the owner and if the owner did not retain out of subsequent payments to the contractor such amount it might be recovered in an action at law to the extent in value of any balance due by the owner to the contractor at the time of such notice. Further amendments and additions in 1919 and 1955 continued the direct-lien coverage.

Appellant particularly emphasizes the provision in § 29–39 that "the risk of all payments made to the original contractor shall be upon such owner if such payments be made after written notice from a person other than an original contractor is received by such owner"; but obviously this was only an effort by the legislature to make it clear that these subsequent statutes were in no way to repeal the additional provision enacted in 1871 that a creditor who had given notice to an owner was accorded recourse other than the security afforded by the filing of a lien.

In fine, giving to the sections of the statutes upon which appellant relies all reasonable import, they fall short of justifying his viewpoint.

Affirmed.