592 P.2d 1154 (1979)
STATE of Wyoming, upon the relation of the ALBANY COUNTY WEED AND PEST DISTRICT, Appellant (Petitioner below),
v.
BOARD OF the COUNTY COMMISSIONERS OF the COUNTY OF ALBANY, Wyoming, Comprised of Marguerite B. Nelson, Charles R. Fortman and Max W. Rardin, Appellee (Respondent below.)
No. 4979.
Supreme Court of Wyoming.
April 5, 1979.
Thomas S. Smith, Smith, Stanfield & Scott, Laramie, for appellant.
George L. Zimmers, County and Prosecuting Atty., for Albany County, Laramie, for appellee.
Before RAPER, C.J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.
*1156 McCLINTOCK, Justice.
Albany County Weed and Pest District (the district) is organized and operates on a county-wide basis under the authorization of Title 11, Ch. 5, W.S. 1977, 1978 Repl.[1] Pursuant to provisions of the Municipal Budget Act, § 9-7-301 et seq., W.S. 1977,[2] it drew up and held hearing on its proposed budget for the fiscal year 1977-78. By letter prior to this hearing it had advised the board of county commissioners (the board) that it would be necessary that a tax of one mill be levied upon all property within the district. The board refused this request and set the levy at .75 mill.
Contending that the action of the board was capricious, arbitrary, characterized by abuse of discretion, in excess of the powers conferred upon the board by the legislature, and not in conformity with law, the district filed this action in the district court of Albany County. By its amended complaint it sought to compel levy of an additional .25 mill or, alternatively, to recover judgment against the board for the amount that that additional levy would bring. The matter was presented on stipulation and argument to the trial court which denied relief. This appeal followed.
It was stipulated that the levy made by the board would not produce sufficient money to fund the 1977-78 budget of the district. However, the district made no attempt in the lower court to adduce evidence demonstrating that the action of the board was capricious and arbitrary as alleged. The only contention made and the only issue before this court is whether § 11-5-111, W.S. 1977, 1978 Repl., imposes on the board the ministerial act of levying such amount of tax as the district seeks, within the statutory one-mill limit, or whether the board has discretion independently to levy a lesser amount. We hold that the board was acting in a discretionary manner and affirm the judgment.
Section 11-5-105 sets forth 14 powers and duties of the district board, including direction to "implement and pursue an effective program for the control of weeds and pests." This section says nothing about taxation or the district board's relation to the levy of taxes. The only section in the chapter relative to taxes is § 11-5-111, which reads in pertinent part as follows:
"The county commissioners shall annually levy a tax to carry out the provisions of this act. The tax shall be levied upon all property in the district and shall not exceed one (1) mill on each one dollar ($1.00) of assessed valuation."
The district argues that the statute is ambiguous so that we must resort to construction to determine the purpose of the legislation. Ambiguity exists when a word or group of words in a statute is susceptible of more than one meaning, DeHerrera v. Herrera, Wyo., 565 P.2d 479, 481, reh. denied, (1977); County of Natrona v. Casper Air Service, Wyo., 536 P.2d 142, 144 (1975). We cannot agree that the words used in § 11-5-111 present double meanings and it appears to us that the language is a plain, unambiguous direction to the board to consider and fix the amount of tax. It may well be, therefore, that there is no occasion to resort to rules of statutory construction. *1157 Johnson v. Safeway Stores, Inc., Wyo., 568 P.2d 908, 911 (1977).
However, we are convinced that whenever one party claims a right or seeks to impose an obligation under the terms of a statute, or group of statutes, it becomes necessary for us to read the statute, determine its intent and purpose, and give effect to that intention. This cannot be a mechanical process and therefore no statute is ever free from meaningful scrutiny by the court considering it. The paramount consideration for such court is that it
"* * * must first examine the statute in question for the purpose of ascertaining what the legislature intended by its enactment. The source of that intent must, wherever possible, be found in the language of the statute itself." Johnson v. Safeway Stores, Inc., supra, 568 P.2d at 911. See also, School Districts Nos. 2, 3, 6, 9, and 10 v. Cook, Wyo., 424 P.2d 751, 756 (1967).
In the performance of this task, we are mindful that we should give effect to "every word, clause and sentence of the statute." Basin Electric Power Cooperative v. State Board of Control, Wyo., 578 P.2d 557, 566, rehearings denied, (1977). Nor should this process be confined to a narrow reading of one particular section because "legislative acts dealing with related matters must be considered in pari materia and the meaning of each such statute be correlated so as to give intelligent meaning to both whenever possible." Kuntz v. Kinne, Wyo., 395 P.2d 286, 288 (1964).
With these precepts in mind, we have examined the whole Chapter 5 of Title 11, particularly § 11-5-105, relating to powers and duties of the district board, as well as the provisions of the Municipal Budget Act, § 9-7-301 et seq., W.S. 1977. We find nothing therein that specifically invests the board with the power to direct the board of county commissioners as to the amount of the tax. We conclude that what the district attempts to do, either under the guise of statutory construction or by a process of implication, is to read into the statute words that are not there, namely, that the commissioners shall levy a tax "in such amount as the district board shall deem necessary" within the statutory one-mill limit.
This we decline to do, under the plain rulings of the court in other cases, which are well summarized in In re Adoption of Voss, Wyo., 550 P.2d 481, 485, where we said:
"Where the legislature has specifically used a word or term in certain places within a statute and excluded it in another place, the court should not read that term into the section from which it was excluded. * * *
"* * * The omission of words from a statute must be considered intentional on the part of the legislature. * * * Words may not be supplied in a statute where the statute is intelligible without the addition of the alleged omission * * * Words may not be inserted in a statutory provision under the guise of interpretation. * * * The Supreme Court will not read into laws what is not there. * * This court will not supply omissions in a statute and redress is with the legislature. * * *"
Were we to adopt the argument of the district we would be violating the plain intention of the legislature as indicated by the legislative history of this and related acts. This history discloses that the legislature at one time included in the weed and pest district act essentially the same words that the district now would have us include therein by implication. "When the legislature amends a statute, it must be presumed that some change in the existing law was intended." DeHerrera v. Herrera, supra, 565 P.2d at 483. Stolldorf v. Stolldorf, Wyo., 384 P.2d 969, 972 (1963) supports the statement of the rule with the further remark that "the courts will endeavor to give some effect to the amendment."
Section 11-5-111 represents a new enactment by the legislature, Ch. 30, S.L. of Wyoming 1973. But it finds its roots in, and in all respects pertinent to this case uses the same language as, a number of *1158 previous statutes, particularly Ch. 175, S.L. of Wyoming 1953, which contained two significant provisions. The act related to the creation of special weed and pest districts. In Section 2 it specifically provides that the district board
"* * * shall certify to the Board of County Commissioners the amount of special mill levy, provided for in Section 3 of this Act, which said District Board considers necessary for district operations during the following year." (Emphasis added.)
Section 3 of this same act requires that the county commissioners
"shall, at the time of the annual levy of general taxes, levy an additional special tax upon the real property in the amount certified to it by the District Board of Directors under Section 2 of this Act, but not to exceed twelve (12) mills on each dollar of assessed valuation * * *." (Emphasis added.)
Chapter 83, S.L. of Wyoming 1961 is a new enactment on the subject of weed and pest control districts and repeals previous laws relating to such districts, including sections two and three of the 1953 act (§§ 11-71 and 11-72, W.S. 1957). Significantly, however, § 5 thereof, relating to duties of the district board, is brief and general in its terms and says nothing about certification by the board of necessary taxes. Section 13, while not identical with present § 11-5-111, is to all intents and purposes identical therewith and requires the commissioners annually to levy a tax for the purposes of the district. Thus, we are confronted with a situation where the legislature, having originally provided exactly as the district contends for in this case, has seen fit to eliminate from the law the power which the district would now imply.
That this omission was intentional is demonstrated by the legislative history of a companion district law now found as Chapter 6 of Title 11, W.S. 1977, 1978 Repl., entitled Predatory Animal Districts. These districts were first provided for in Ch. 36, S.L. of Wyoming 1943. Section 7 of the original act required the county commissioners to levy "[a] special tax of six (6) mills on the dollar on all sheep assessments," but Ch. 8, § 5, S.L. of Wyoming 1945 required the district board to "certify" to the commissioners
"the amount of special mill levy provided for in Section 7 of this Act, which said District Board considers necessary for district operations during the following year."
By Section 7 the commissioners were required to
"levy an additional special tax in the amount certified to it by the District Board under Section 5 of this Act, but not less than six (6) mills nor more than twenty (20) mills on the dollar on all sheep assessments * * *."
It is indeed notable that this manner of levy, with the district board playing the dominant role, has continued throughout several amendments of the act. The sections now appear as §§ 11-6-204 and 11-6-210 of Title 11, Ch. 6, W.S. 1977, 1978 Repl.
It is the duty of the courts when construing legislation to attempt to effectuate the purposes and intent of the legislature. We cannot rewrite a statute that we believe speaks clearly. Other than to contend that the commissioners have not carried out the plain mandate of the law, the district has not pursued its allegation that the board acted capriciously, arbitrarily and in abuse of discretion and we do not consider the case from that point of view.
"While a tax levy should not be higher than necessary to fulfill the purpose thereof, nor so low that there will not be adequate funds to perform governmental functions, yet, in the absence of, or within, constitutional or statutory limitations, the amount or rate rests in the discretion of the levying authorities and the courts will not interfere unless this discretion is clearly abused or the amount is so grossly excessive as to indicate a fraudulent purpose." 20 C.J.S. Counties § 282, pp. 1219-1220.
Consolidated Naval Stores Co. v. Hendry, 158 Fla. 865, 30 So.2d 617, reh. denied (1947); People ex rel. Bergan v. New York *1159 Cent. R. Co., 392 Ill. 525, 64 N.E.2d 895 (1946); Maricopa County v. Southern Pac. Co., 63 Ariz. 342, 162 P.2d 619 (1945); and Board of Education of Cleveland Heights City School Dist. v. Evatt, 136 Ohio St. 283, 25 N.E.2d 453 (1940).
The board could not act in an arbitrary and capricious way and levy no tax if taxation was in fact necessary, or levy a tax that was the result of an arbitrary and capricious decision upon its part, but that is not the case and we have no findings of fact or evidence that would support such a charge.
The judgment is affirmed.
NOTES
[1] This chapter was enacted by Ch. 30, S.L. of Wyoming 1973 and was included in Wyoming Statutes Annotated, 1977 Republished Addition (W.S. 1977). Ch. 32, S.L. of Wyoming 1978 constituted an extensive revision of Title 11 insofar as it referred to the Agricultural Department and many sections were renumbered. Although the 1978 revision took effect after the events involved herein occurred, we have found no changes therein pertinent to the problem here presented and references to those statutes pertinent to weed and pest control, as well as predatory animals, shall all be considered to the 1978 replacement unless otherwise indicated.
[2] Article 3 of Chapter 7, Title 9, W.S. 1977 is entitled Municipal Budget Act. Section 9-7-302 defines the word "municipality" as including among other things, "all special purpose districts having the power to levy or require the levy of taxes * * *." The power of the district here involved to require the levy of taxes is not at issue. However, we point out at this early place in the opinion that we find nothing in that act which is pertinent to the manner in which taxes shall be levied for the benefit of these special districts.