James R. CROXTON, Mary E. Croxton, Wardwell Development Corporation, and Fort Wardwell KOA, Inc., Appellants (Defendants),

v.

The BOARD OF COUNTY COMMISSIONERS OF NATRONA COUNTY, Wyoming, Appellee (Plaintiff).

No. 5642.

Supreme Court of Wyoming.

May 6, 1982.

Rehearing Denied June 1, 1982.

Earl R. Johnson, Casper, for appellants.

Michael J. Burke, Chief Civ. Deputy Natrona County and Pros. Atty., Casper, for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

This appeal is from a district court's entry of a permanent injunction barring appellants from operating a campground on their own property. The district court ordered the entry of the injunction after finding that appellants' use of the land as a campground did not precede the passage of a zoning resolution by the Board of Natrona County Commissioners which prohibited such a use. On appeal, appellants challenge that finding.[1]

We will reverse with directions to vacate the injunction.

In early 1979, appellants decided to open a campground on their property with permanent support facilities as well as individual campsites. On January 26, 1979, a contract was signed whereby Custom Pools agreed to build a 20' × 50' swimming pool on the proposed campsite. During the spring, architects were hired to design a campground. In June 1979, appellants obtained a KOA franchise for $14,000 and commenced construction of the permanent facilities. Also, during 1979 appellants paid to have telephone, electrical, and water hook-ups at the proposed site.[2] Plumbing

---

1. Appellants raised several other issues we need not consider because of our holding on the issue we do address.

2. The evidence showed that Pacific Power and Light did provide the property commercial ser-

permits were received from the Wardwell Water and Sewer District for various buildings at the campground on July 26 and September 7, 1979. Insurance for Fort Wardwell KOA was purchased on September 18, 1979. A bill, dated September 21, 1979 for leveling work at the campground was also received into evidence.

The permanent facilities, which included a store, laundry room, gas station, restaurant, and game room, as well as the indoor swimming pool, were planned for and built upon land within what the Board had designated as an open district. In these districts, according to the Board's zoning resolution which incorporated the principles outlined in its comprehensive zoning plan, "no zoning regulations [were] in effect." For land so designated no land use restrictions prohibited a landowner from using his property in any fashion he desired. Accordingly, appellant needed neither a permit nor a variance for construction of his permanent facilities, and the Board's later resolution changing the zoning designation of some of appellants' other property did not affect this land.

The problem in this case arose in connection with the land used for the camping facilities. The campsites had originally been planned to be located on lots zoned for general and light industrial uses. Under the Board's zoning resolution, in order to construct the camping facilities on lots within areas designated either light industrial or general industrial, both a zoning change and a conditional use permit were necessary. On January 7, 1980, appellants petitioned the Board for the necessary zoning changes and conditional use permits. The matter was then referred to the Planning and Zoning Commission (Commission) for public hearing. But before any hearings were conducted, appellants announced that if their petition was turned down, they would build the camping facilities on parcels of land located in an area designated as an open district. When the Commission on April 3, 1980 recom-

mended denial of appellants' request for a conditional use permit, appellants in their planning for the campsites assumed that the Board would go along with that recommendation. Plans were formulated to build the campsites on the alternate parcels of land which had received the open district designation.

Meanwhile, a petition had been circulated by neighboring landowners to rezone these alternate parcels from open district to rural business. Though it must be acknowledged that several other lots in the area were affected by the proposal, the principal impact of this rezoning, at least as far as this case is concerned, was to prohibit the construction of the campsites. This petition was presented to the Board on February 25, 1980. It was referred to the Commission, and a public hearing was held. On May 1, 1980, the Commission approved the proposal and forwarded it to the Board with a do-pass recommendation.

During the month of June 1980, appellants commenced renting space to campers at the alternate site even before the construction was completed. On June 20, 1980, the Board officially denied appellants' request for a conditional use permit for the property originally planned to serve as the campground. At the end of June, appellants commenced the installation of 58 electrical pedestals at the alternate site still officially within the open district. This work was completed by the end of the first week in August.

After conducting a public hearing on July 18, 1980, the Board adopted a resolution on August 5, 1980 incorporating the rezoning plan outlined in the petition circulated by appellants' neighboring landowners. Attempts to stop appellants from using their land as a campground culminated with the Board filing suit on July 8, 1981. The Board prayed for an injunction barring appellants' use of their alternate site as a campground. They argued that the use violated the zoning restrictions embodied in the August 5, 1980 resolution. On Novem-

vice as early as 1977; however, what was hooked up in 1979 is unclear. Also, a meter

and a transformer for 30 campsites were installed June 30, 1981.

ber 12, 1981, the district court found for the Board and enjoined appellants' use of the alternate parcels of land as a campground.

All of the boards of county commissioners throughout the state were given the power to adopt zoning resolutions for their own counties in order to restrict and control the use of lands located in unincorporated areas. Section 18–5–201, et seq., W.S.1977. Specifically, the boards were empowered to create planning and zoning commissions which would develop comprehensive plans outlining the counties' zoning restrictions. From these plans, zoning resolutions would be drawn which were to provide details describing the zoning restrictions and the procedure necessary to effectuate any zoning changes. The necessity of complying with any particular board's zoning resolution was emphasized in § 18–5–203, W.S. 1977. That section provides:

"It is unlawful to locate, erect, construct, reconstruct, enlarge, change, maintain or use any building or use any land within any area included in a zoning resolution without first obtaining a zoning certificate from the board of county commissioners and no zoning certificate shall be issued unless the plans for the proposed building, structure or use fully comply with the zoning regulations then in effect. The board of county commissioners shall act promptly upon any application filed with it and shall grant certificates when the proposed construction or use complies with the requirements of the zoning resolution. If it denies the application, the board shall specify the reasons for such denial. The decision of the board of county commissioners may be reviewed by the district court and by the supreme court upon appeal in the same manner as provided in W.S. 15–626, for review of decisions of boards of adjustment."

Section 18–5–205, W.S.1977, authorized a board to sue to enjoin violations of its zoning restrictions. It specifically provides:

"Any zoning resolution passed by the board pursuant to W.S. 18–5–202(b) and (c) is enforceable in addition to other remedies provided by law by injunction, mandamus or abatement."

On September 15, 1972, the Board of County Commissioners for Natrona County adopted a zoning resolution pursuant to the legislature's authorization. It provides that:

"After the adoption hereof, no person shall locate, erect, construct, reconstruct, enlarge, change, maintain or use any building or structure, or use any land within any area included in any zoning district except the Open District (6.10 OD, below) which constitutes a major change in land use or function of the property permitted in the district, without obtaining a zoning certificate, and no such zoning certificate shall be issued unless the plans for the proposed building, structure or use fully complies with this Resolution." Section 3.1, Natrona County Zoning Resolution.

The resolution provides a definition of the term "use":

"Use: The purpose or activity for which the land or structure thereon is designated, arranged, or intended, or for which it is occupied, utilized, or maintained." Section 4.0(134), Natrona County Zoning Resolution.

In § 6.10(1) the resolution discusses the permitted uses of an open district.

"Permitted Uses: Any use not otherwise prohibited by law or subject to prohibition by remedies available, at law or in equity, to private persons or public bodies for the abatement of nuisances and like land use practices. There being no zoning regulations in effect as to this District, the zoning certificate otherwise required under Section 3.0, above, shall not be required for the improvement or use of any land in this District."

The resolution adopted by the Board on August 5, 1980 amended the original zoning resolution. The only change was of the classification of certain land which had previously been designated as open districts. No alteration was made to either § 3.1 or § 4.0(134). Accordingly, the August resolution barred any major change in the use of

the particular land affected unless a zoning certificate was first obtained as set out in § 3.1.

The question for us to decide then is whether the district court erred in its decision that appellants' use of the land as a campground after August 5, 1980 constituted a major change in use. To reach that conclusion the district court relied upon precedent from other states to the effect that a property owner must have commenced construction in good faith without any knowledge that his building permit would soon be withdrawn. See Annotation, Zoning Ordinance—Retroactive Effect, 49 A.L.R.3d 13, 47 (1973). However, we must make two observations. First, there is a substantial split of authority even within the A.L.R. Annotation. Second, the facts of this case are quite different from those relied upon by the district court in that appellants' land was located in open districts and thus no building permit had ever been needed or given. Open districts were in effect outside any zoning restrictions.

■ As this court has previously acknowledged: "[A] property owner has no vested right (which will withstand a later zoning regulation) in a development which is merely contemplated." *Snake River Venture v. Board of County Commissioners, Teton County*, Wyo., 616 P.2d 744, 751 (1980). But that is not to say a zoning regulation or resolution should not be examined itself to determine whether it has altered the general rules and provided property owners with additional rights.

In this case, the Board in its original zoning resolution gave a unique definition to the word "use." As set out previously, "use" was defined as "[t]he purpose or activity for which the land * * * is designated, arranged, *or intended, or* for which it is occupied, utilized, *or* maintained." (Emphasis added.)

The Board in its brief tries to argue that it really did not mean to define "use" to include intended activities. It claims that the word "use" is a term of art and notes that "virtually all the authority [it] has examined hold that a 'use' to be noncon-

forming must be actual and not merely contemplated or intended."

■ Normally, in construing an administrative body's regulation, we defer to the agency's construction of its own rule. However, where the agency's interpretation is clearly erroneous or inconsistent with the rule or regulation's plain meaning, we must disregard it. *Dawson v. Andrus*, 612 F.2d 1280 (10th Cir. 1980). Legislative enactments, whether by the state legislature or local governing body, will not be enlarged or expanded by this court. *Lo Sasso v. Braun*, Wyo., 386 P.2d 630 (1963). The plain, ordinary and usual meaning of a word controls unless the enactment provides to the contrary. *State v. Stern*, Wyo., 526 P.2d 344 (1974). Where the language of the enactment is unambiguous and conveys a clear and definite meaning, this court must give effect to that meaning. *Board of County Commissioners of County of Campbell v. Ridenour*, Wyo., 623 P.2d 1174 (1981). That is the case here. The zoning resolution on its face includes intended uses; we cannot ignore that fact.

Appellants' intent was to have a campground located on the land in question even before they had any knowledge of the Board's consideration of a change. Construction had started more than a month before the Board adopted the resolution changing the zoning designation of appellants' land, and even earlier appellants had rented some spaces to campers. In view of the Board's definition of the word "use," appellants were "using" the land as a campground before the resolution came into effect. They had intended to use it before they knew a change in the zoning was under consideration. Accordingly, their continued use of the land as a campground was not a major change in use which under the August 5, 1980 zoning resolution required a zoning certificate. The district court erred in ruling otherwise.

Reversed and remanded with directions to vacate the injunction.