ADOBE OIL & GAS CORPORATION, Oxy Petroleum, Inc., McCormick Properties, Inc., McCormick Oil & Gas Company, Fannin Bank and Glenn Harris, Jr., Trustee, Appellants (Defendants),

v.

GETTER TRUCKING, INC., Appellee (Plaintiff).

No. 83–115.

Supreme Court of Wyoming.

Jan. 26, 1984.

Rehearing Denied March 6, 1984.

B.J. Baker of Brown, Drew, Apostolos, Massey & Sullivan, Casper, for appellants.

Dan R. Price II of Morgan, Brorby, Price & Roberts, Gillette, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROSE, Justice.

This action was commenced by appellee Getter Trucking, Inc., as plaintiff, against appellants Adobe Oil & Gas Corporation, Oxy Petroleum, Inc., McCormick Properties, Inc., McCormick Oil & Gas Company, Fannin Bank and Glenn Harris, Jr., Trustee, to foreclose a lien under and by authority of the provisions contained in Title 29, Ch. 3, W.S.1977 (1981 Replacement). Appellants were the owners of an oil and gas lease and Oxy Petroleum, Inc. was the operator of the lease for itself and the other appellants. Appellee Getter Trucking, Inc., under an oral contract with John E. Burns Drilling Company, had furnished labor and materials necessary to transport an oil and gas drilling rig from North Dakota to appellants' lease and to set it up on the lease. John E. Burns Drilling Company was a contractor that drilled an oil and gas well for appellants under a written agreement

according to which the appellants urge that the drilling company agreed to pay for the move-in and set-up of the rig on the leasehold.[1] Appellants therefore refused to honor or pay the amount of the Getter Trucking, Inc. lien claim.

It was the contention of the appellants owners of the lease that the trucking company did not possess lien rights against the properties of the leasehold because there was no contract between appellants and the drilling company to pay for the transportation of the rig to and its set-up on the lease. The appellants also argue that they have no liability for the additional reason that Getter Trucking failed to comply with the notice provisions of the applicable lien statutes and particularly § 29–3–111, W.S.1977. We will not, however, discuss the notice issue, since our decision will rest upon a resolution of the contract question.

There was no dispute as to the facts of the case and the matter was tried to the court without a jury on stipulated and agreed facts.

Appellants identify the following question for our resolve:

> Is a third-party subcontractor entitled to a lien against an oil and gas lease where there is no contract between the owner of the lease and the contractor to pay for the services supplied?

We will reverse the trial court for the reason that the trucking company did not have a lien against the lease since there was no contract between the owners of the lease and the drilling company to pay for the move-in and set-up of the rig on the leasehold.

### Discussion of the Issue

As has been noted, the appellants urge that there was no agreement between the drilling contractor and the appellants that they would pay for the transportation and set-up of the rig, in which situation the subcontractor Getter Trucking had no lien rights against the leasehold. The appellants go on to point out that their contract provided that it was, in fact, the drilling contractor who agreed to be responsible for these expenses—not the appellant leasehold interest owners and operators, see n. 1.

Just here, we pause to take special notice of the fact that the appellee trucking company disputes the leasehold owners' contention that the contract does not obligate the owners to pay for the transportation and set-up costs. We simply cannot agree with the appellee in this regard. The only applicable provisions of the contract between the appellants and the drilling contractor speak clearly to the proposition that the *" * * * [c]ontractor* [drilling contractor] pay all cost to mobilize rig and equipment to above location."* (Emphasis added.) ¶ 4.1, supra, n. 1,

and, where the obligations for costs and expenses are identified in ¶ 6.11 of the contract, the provision says clearly—and with-

---

1. The relevant part of ¶ 4 of the agreement between appellants and the Burns Drilling Company provides:

   "4. DAYWORK RATES:
   "Contractor [the drilling company] shall be paid at the following rates for the work performed hereinunder.
   "4.1 Mobilization: Operator [Oxy Petroleum] shall pay Contractor a mobilization fee of $–0– or a mobilization day rate of $–0– per 24 hour day. This sum shall be due and payable in full at the time the rig is rigged up or positioned at the well site ready to spud. Mobilization shall include: Contractor to pay all cost to mobilize rig and equipment to above location. Dayrates shall commence when rigged-up ready to spud.."
   Paragraph 6 provides in pertinent part:

   "6. EQUIPMENT, MATERIALS AND SERVICES TO BE FURNISHED BY DESIGNATED PARTY:
   "The machinery, equipment, tools, materials, supplies, instruments, services, and labor listed as the following numbered items including any transportation required for such items unless otherwise specified, shall be provided at the location and at the expense of the party hereto as designated by an X mark in the appropriate column.

   | | "To be Provided by and At the Expense Of | |
   |---|---|---|
   | "Item | Operator | Contractor |
   | * * * * * | | |
   | "6.11 Transportation of Contractor's property: Move in ......... | | X |
   | Move out   Stack | | |
   | Rig Off Location | X | " |

out such ambiguity as would qualify for our interpretation—that the "Transportation * * * Move-in" costs will be borne by the *"Contractor."* (Emphasis added.) Supra, n. 1.

■ There is nothing ambiguous about these contract terms, and there are no other contrary provisions of the agreement which apply to the obligation to pay for the move-in and set-up of the rig. For us to attempt to find the provisions set out in n. 1, supra, to be ambiguous by considering other provisions of the agreement which are not relevant to the issue of move-in and set-up would be to undertake the writing of another agreement for the parties, and courts cannot do that. We will not rewrite contracts under the guise of interpretation. *McCartney v. Malm*, Wyo., 627 P.2d 1014 (1981); *Wyoming Machinery Company v. United States Fidelity and Guaranty Company*, Wyo., 614 P.2d 716 (1980); *Quin Blair Enterprises, Inc. v. Julien Construction Company*, Wyo., 597 P.2d 945 (1979).

The question is, then: Absent an agreement for transportation and set-up costs and services between the drilling contractor and the owners and operators of the lease, does a third-party subcontractor, having performed the set-up and transportation services at the behest of the drilling contractor, have lien rights against the leasehold?

### Applicable Statutes

Section 29-3-103(a)(iii), W.S.1977 [2] grants a lien to any person who furnishes transportation *under contract with the owner* of a leasehold. The statute simply does not give a lien to a party who furnishes transportation for a contractor where the contractor does not have an agreement with the owner to the effect that the owner is obligated to pay for such services.

■ Section 29-3-104, W.S.1977 [3] gives a subcontractor a lien only to the same extent as the contractor's lien. This means that a subcontractor would not have lien rights in circumstances in which the contractor was not possessed of such rights unless the owner had agreed to pay and had paid the contractor for the claimed services and the contractor had not paid the subcontractor as was the case in *Arnold v. American Pipe & Supply Co.*, Wyo., 413 P.2d 874 (1966). As applied to the case at bar, the drilling contractor would have no lien against the leasehold for transportation and set-up costs because he does not have a contract with the owners and operators of the leasehold to pay for such services.

Section 29-3-110, W.S.1977 [4] provides that nothing in Ch. 3 shall be construed to

**2.** Section 29-3-103, W.S.1977 provides in pertinent part:

"(a) *Every person who works upon or furnishes material,* whether incorporated into the real property or not, *under contract with the owner* of any interest in real estate or with an agent, trustee or receiver of an owner has a lien to secure payment for:

\* \* \* \* \* \*

"(iii) Transportation and related mileage charges plus interest from the date due;". (Emphasis added.)

**3.** Section 29-3-104, W.S.1977 provides:

"*Any person, who furnishes or rents any materials or provides any work under contract with any contractor or subcontractor shall have a lien* on all the property on which the lien of the contractor may attach *to the same extent as the contractor's lien* to secure payment." (Emphasis added.)

We have held that the oil and gas leasehold estate and well of the owner may be subject to

materialmen's liens for amounts owing from the principal contractor to materialmen when the owner paid the principal contractor in full, *pursuant to the drilling contract,* after the well was completed prior to receiving notice from the materialmen that they had not been paid by the principal contractor. *Arnold v. American Pipe & Supply Co.,* Wyo., 413 P.2d 874 (1966), discussed infra.

**4.** Section 29-3-110, W.S.1977 provides:

"*Nothing in this act [chapter] shall be construed to fix a greater liability against the owner of the land or leasehold* [or pooled or unitized lands, leases or interests, as the case may be] *than the price or sum stipulated by the owner to be paid for the materials or services furnished or labor performed.* The owner shall not have the right to offset obligations of the contractor unless these obligations arise out of the original contract." (Emphasis added.)

fix a greater liability against the owner of the leasehold than the price or sum stipulated by the owner to be paid for the materials or services furnished. Again, as applied to the facts of this case, the meaning of this statute is that the appellants' owners and operators of the leasehold cannot be obligated for services and materials that they have not agreed with the drilling contractor that they would pay.

*Statutory Construction:*

■ Our well-established and familiar rule of statutory construction is that, if the language of a statute is clear and unambiguous, the courts must abide by the plain meaning of the statute. We said in *Croxton v. Board of County Commissioners of Natrona County*, Wyo., 644 P.2d 780, 784 (1982):

"* * * The plain, ordinary and usual meaning of a word controls unless the enactment provides to the contrary. *State v. Stern*, Wyo., 526 P.2d 344 (1974). Where the language of the enactment is unambiguous and conveys a clear and definite meaning, this court must give effect to that meaning. *Board of County Commissioners of County of Campbell v. Ridenour*, Wyo., 623 P.2d 1174 (1981)."

In our effort to identify legislative intent, we said in *Geraud v. Schrader*, Wyo., 531 P.2d 872, 878 (1975):

"The courts must determine legislative intent from statutory language and not conjecture. *Mahoney v. L.L. Sheep Co.*, 1958, 79 Wyo. 293, 302, 333 P.2d 712, 715. Where the language of a statute is plain, unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory construction, and the court has no right to look for and impose another meaning. *Druley v. Houdesheldt*, 1956, 75 Wyo. 155, 160, 294 P.2d 351, 352, reh. den. 75 Wyo. 155, 296 P.2d 251. Courts will not usurp the power of the legislature by deciding what should have been said. *Barber v. State Highway Comm'n.*, 1959, 80 Wyo. 340, 351, 342 P.2d 723, 725."

In *Haddenham v. City of Laramie*, Wyo., 648 P.2d 551, 553–554 (1982), we said:

"All portions of the act must be read in pari materia, and every word, clause and sentence of it must be given effect, *State Board of Equalization v. Cheyenne Newspapers, Inc.*, Wyo., 611 P.2d 805 (1980); *State ex rel. Albany County Weed & Pest District v. Board of County Commissioners of Albany County*, Wyo., 592 P.2d 1154 (1979); *Department of Revenue and Taxation v. Irvine*, Wyo., 589 P.2d 1295 (1979), all with the purpose of ascertaining and giving effect to the legislative intent, *Sanches v. Sanches*, Wyo., 626 P.2d 61 (1981); *Oroz v. Hayes*, Wyo., 598 P.2d 432 (1979); *McGuire v. McGuire*, Wyo., 608 P.2d 1278 (1980)."

■ When these principles are applied to the statutes cited above, and when the statutes are considered together, it becomes clear to us that the legislature intended and the statutes say that a subcontractor is not entitled to a lien against the leasehold unless the contractor has an agreement with the owner that the owner will pay for the services asserted in the lien.

In *National Supply Co.-Midwest v. Weaver*, 35 Wyo. 224, 248 P. 353 (1926) we construed the predecessor statutes of §§ 29-3-104 and 29-3-110, W.S.1977. The predecessor statute of § 29-3-104, W.S. 1977 was § 4831, W.C.S.1920, and the predecessor statute of § 29-3-110, W.S. 1977 was § 4838, W.C.S.1920.

Section 4831, W.C.S.1920 provided in pertinent part:

"Any person * * * or material man who shall furnish such materials * * * or supplies to a contractor or subcontractor * * * shall have a lien upon the land or leasehold or other interest therein * * * and upon said oil well, gas well * * * in the same manner and to the same extent as the original contractor, for the amount due for such materials * * *."

Section 4838, W.C.S.1920 provided:

"Nothing in this chapter shall be construed to fix a greater liability against the owner of the land or leasehold interest therein than the price or sum stipulated to be paid for such materials, machinery or supplies furnished, or labor performed."

In the *National Supply Co.-Midwest v. Weaver* case, we held that these predecessor statutes meant that a subcontractor has a right to a lien only to the same extent that the original contractor would have lien rights for the material or services in question. The court, quoting with approval from 40 C.J. 147–148, said:

" 'A subcontractor or other person not contracting directly with the owner, is charged with notice of, and bound by, the terms of the contract between the owner and contractor relating to the mode and terms of payment, and his contract with the contractor is presumed to have been made with reference to such terms. Where the mode of payment provided for in the original contract is inconsistent with the existence of a lien in favor of the subcontractors and others, they can have no lien unless the owner has, by his conduct, deprived himself of the right to set up such provisions against the lien claimed.' " 248 P. at 355.

The court further quoted from Phillips on Mechanics' Liens, § 62, as follows:

" 'The lien, or right of the subcontractor and others, discussed in the preceding section [§ 58], is always in strict subordination to the terms of the original contract between the owner and his immediate contractor. All such persons, in the absence of fraud, are presumed to have notice of the existence of such contract, a knowledge of its terms and of the rights and obligations of parties thereunder. Its terms are conclusive against them so far as any claim upon the owner or right of lien upon his premises is concerned.' " 248 P. at 355.

In *Cities Service Oil Company v. Pubco Petroleum Corporation*, Wyo., 497 P.2d 1368, 1373 (1972) we held:

"No lien can be created under our law without a contract with an owner or part-owner, either legal or equitable, upon the property upon which the lien is established."

The *Cities Service Oil Company* case was concerned with different problems and different statutes, but the basic principle is applicable in this case. There was no contract between appellants and John E. Burns Drilling Company for transportation and set-up of the rig on the location, and therefore the subcontractor possessed no lien rights against the leasehold.

The appellee urges that *Arnold v. American Pipe & Supply Co.*, supra, 413 P.2d 874, stands as authority for the proposition that a subcontractor's lien against the leasehold may be valid even though the contractor could not have filed the lien. In the *Arnold v. American Pipe & Supply Co.* case, there was a contract between the leasehold owner and the contractor for the services and materials furnished by the subcontractor. The contractor had been paid in full for the services of the subcontractor but had failed to remit the moneys owed to the subcontractor. Since there was an agreement that the owner was obligated for the material and services rendered, we held that the subcontractor was possessed of lien rights against the owner even though, in that case, the contractor would not have had lien rights since he had been paid for the claimed services. *Arnold v. American Pipe & Supply Co.* is distinguishable from this case because in Arnold the owner had a contractual obligation to pay for the materials and services in question while, in the case at bar, the appellants' leasehold owners and operators were not contractually obligated to pay the contractor for materials and services rendered by the subcontractor, and therefore the owners came within the protection of the lien statutes, §§ 29–3–103, 29–3–104 and 29–3–110.

◼ We hold that the applicable lien statutes do not give a subcontractor rights to a lien upon an oil and gas leasehold where transportation and set-up costs and

expenses have been incurred at the instance of the contractor in circumstances where the owner of the leasehold has not agreed with the contractor that the owner would be responsible for the payment of such costs and expenses.

Reversed.