Ron **PINTHER**, Petitioner (Plaintiff),

v.

**STATE of Wyoming, DEPARTMENT OF ADMINISTRATION AND INFORMATION, and Mike Miller, Respondents (Defendants).**

No. 92–287.

Supreme Court of Wyoming.

Jan. 11, 1994.

MACY, Chief Justice.

Petitioner Ron Pinther filed a grievance and requested the formation of a grievance committee, claiming that he had been denied a veteran's preference, after the Department of Transportation hired another applicant for a senior planner position. Respondent Mike Miller, State Personnel Administrator for Respondent State of Wyoming, Department of Administration and Information, denied both the grievance and the request for the formation of a grievance committee.

We affirm.

Pinther presents the following issues for our review:

1. Is Petitioner, Ron Pinther, Entitled to the Establishment of a Grievance Committee Pursuant to the Wyoming Personnel Rules?

2. Does "Veterans Preference" Only Apply in Cases of "Initial Hiring o[r] Appointment to Positions["] with the State of Wyoming?

3. Is "Veterans Preference" Provided Only an Individual when he is "Otherwise Equally Qualified"?

4. Is "Veterans Preference" Applied Only in Cases Where "Scored Examinations["] are Given?

The district court certified this case to the Supreme Court pursuant to W.R.A.P. 12.-09(b). The facts, as found by the district court, are as follows:

Petitioner Ron Pinther is presently employed by the State of Wyoming as a Senior Planner for the Department of Administration and Information. On or before February 12, 1992, he applied for a vacant position of Senior Planner with the Department of Transportation of the State of Wyoming. On March 4, 1992 Petitioner was granted an interview for the position. On March 12, 1992, he received a phone call from [the Department of Transportation]. [It] told Pinther [ ]he had not been selected, however, [it] informed him that the decision was a close one and that [another applicant] had been selected. Mr. Pinther believes he should have been selected for the position based upon his qualifications, experience and the fact that he

Mitchell E. Osborn of Grant & Osborn, Cheyenne, for petitioner.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, Sr. Asst. Atty. Gen. and Sleeter C. Dover, Asst. Atty. Gen., for respondents.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

should have been given preference as a qualified veteran. On March 23, 1992, pursuant to the Wyoming Personnel Rules, he filed a grievance with ... the Wyoming Department of Transportation, and on March 27, 1992, Pinther was informed by [the Department of Transportation] that: 1) "Veterans Preference" only applies to scored exams, 2) "Veterans Preference["] only applies on initial hiring, 3) [h]e could not file a grievance concerning another agency's decision, and 4) ... the selection was given to the "person best matching the job requirements[."] [The Department of Transportation] stated that [it] didn't find Pinther's grievance to be valid. On April 1, 1992, pursuant to the Wyoming Personnel Rules, Petitioner Pinther filed a grievance with ... the Director of the Wyoming Department of Transportation and Mike Miller, the Personnel Administrator for the State of Wyoming. On April 10, pursuant to the Wyoming Personnel Rules, Pinther requested establishment of a grievance committee from Mike Miller. On April 21, 1992, he received a letter from Mike Miller, refusing to establish a grievance committee. It is upon this letter that Petitioner filed his Petition for Review.

■ When a case is certified to this Court pursuant to W.R.A.P. 12.09(b): "[W]e must review the decision 'under the appellate standards applicable to a reviewing court of the first instance.'" *Amax Coal Company v. Wyoming State Board of Equalization*, 819 P.2d 825, 828 (Wyo.1991) (quoting *Campbell County v. Wyoming Community College Commission*, 731 P.2d 1174, 1175 (Wyo. 1987)), *quoted in Texaco, Inc. v. State Board of Equalization*, 845 P.2d 398; 399 (Wyo. 1993). The scope of our review of administrative decisions is defined by Wyo.Stat. § 16–3–114(c) (1990). *See Thunder Basin Coal Company v. Study*, 866 P.2d 1288, 1290 (Wyo.1994).

### Grievance Committee

■ Pinther requested the formation of a grievance committee to determine the proper interpretation of the veteran's preference statute, Wyo.Stat. § 19–6–102 (1977). He contends that, under chapter XII, section 5(e) of the personnel rules, the personnel administrator abused his discretion when he decided not to form a grievance committee. We disagree.

Under section 5(e), the decision as to whether to form a grievance committee is within the discretion of the personnel administrator:

> (e) If the decision of the agency head or the designee is unsatisfactory to the employee and if the grievance involves a written reprimand, a disciplinary suspension or an involuntary reappointment, the employee may, within five (5) days of receipt of the decision, request the establishment of a Grievance Committee. *Other matters may be considered by a Grievance Committee at the discretion of the Personnel Administrator.*

PERSONNEL RULES OF THE EXECUTIVE BRANCH OF WYOMING STATE GOVERNMENT ch. XII, § 5(e) (1989) (emphasis added).

■ Whether the personnel administrator should have granted Pinther's request for the formation of a grievance committee depends upon the construction and application of the personnel rules. "When rules are adopted pursuant to statutory authority and are properly promulgated, they have the force and effect of law. Thus, an administrative agency is bound to follow the applicable statutes and its own rules and regulations." *Fullmer v. Wyoming Employment Security Commission*, 858 P.2d 1122, 1123–24 (Wyo.1993) (citations omitted). This Court will defer to an administrative agency's construction of its rules unless that construction is clearly erroneous or inconsistent with the plain meaning of the rules. *Doidge v. State Board of Charities and Reform*, 789 P.2d 880, 884 (Wyo. 1990) (citing *Croxton v. Board of County Commissioners of Natrona County*, 644 P.2d 780 (Wyo.1982)).

Pinther has failed to show that the personnel administrator's interpretation of the personnel rules was clearly erroneous or inconsistent with the plain meaning of the rules. He argues that his questions concerning § 19–6–102 present an "other matter" worthy of the establishment of a grievance committee. Section 5(e) grants the personnel administrator discretionary power to form a

grievance committee to hear other matters, which are not grievances involving written reprimands, disciplinary suspensions, or involuntary reappointments. Pinther's claim clearly qualifies as an "other matter" under the language of section 5(e). His request for the formation of a grievance committee invoked the personnel administrator's section 5(e) discretionary power.

The personnel administrator denied Pinther's request because the personnel rules precluded Pinther from filing a grievance against the Department of Transportation. The personnel rules define "grievance" as:

> Any dispute, excluding dismissal or reduction in force, *between an employee and the management of the employee's agency* which involves the interpretation or application of policies, rules, regulations and/or statutes which have been adopted by an agency, Governor's Executive Order or the State Legislature to cover personnel practices and/or working conditions.

PERSONNEL RULES, *supra*, at Appendix, Definition No. 32 (emphasis added). The definition of "grievance" makes it clear that Pinther, as a Department of Administration and Information employee, could not file a grievance against the Department of Transportation. The personnel administrator correctly interpreted and applied the personnel rules when he denied both the grievance and the request for the formation of a grievance committee. His conclusions of law were in accordance with law, and his denial of Pinther's requests was not arbitrary, capricious, or an abuse of discretion. Section 16–3–114(c)(ii)(A).

### Veteran's Preference

Pinther presents three issues involving § 19–6–102, the veteran's preference statute. The statute provides in pertinent part:

> (a) In every public department and upon all public works in Wyoming, members of the United States military establishment in any war or conflict as defined in section 101, title 38, United States Code, honorably discharged from service, and the widows of members during widowhood, *shall be preferred for appointment or employment.*

Section 19–6–102(a) (emphasis added). Pinther argues that the Legislature intended for a qualified veteran to be given preference any time he makes an application for a state job vacancy. He claims that the preference should be given regardless of whether or not the veteran is a state employee. The personnel administrator interpreted the statute as granting a preference to veterans only when they are initially being considered for state government positions.

 The parties' divergent interpretations of § 19–6–102(a) are evidence that the statute is ambiguous. *State Board of Equalization v. Tenneco Oil Company,* 694 P.2d 97, 99 (Wyo.1985). Our rules for statutory construction are well established:

> "[A] statute is ambiguous ... if it is found to be vague or uncertain and subject to varying interpretations." "[W]hether an ambiguity exists in a statute is a matter of law to be determined by the court."

. . . .

When the court determines that a statute is ambiguous, the court "will resort to general principles of statutory construction in the effort to ascertain legislative intent." We believe that

> "in ascertaining the legislative intent in enacting a statute ... the court ... must look to the mischief the act was intended to cure, the historical setting surrounding its enactment, the public policy of the state, the conditions of the law and all other prior and contemporaneous facts and circumstances that would enable the court intelligently to determine the intention of the lawmaking body."

"Knowledge of the settled principles of statutory interpretation must be imputed to the legislature." This court presumes that the legislature enacts statutes "with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law, and as part of a general and uniform system of jurisprudence...."

. . . .

Another rule of statutory interpretation we have occasionally invoked is that, in construing an ambiguous statute, the administration of which is charged to a particular executive branch agency, we will give deference to that agency's interpretation unless it is clearly erroneous.

... If an ambiguous statute has been construed by an agency charged with administering it, we will accord deference to, but are not bound by, that construction. After all, the final construction of an ambiguous statute is a question for the court.

*Parker Land and Cattle Company v. Wyoming Game and Fish Commission*, 845 P.2d 1040, 1043–45 (Wyo.1993) (citations omitted).

Applying the rules for statutory construction, we read the phrase "members of the United States military establishment in any war or conflict ... honorably discharged" in conjunction with the phrase "shall be preferred for appointment or employment." Taken together, these phrases evince a legislative intent to encourage qualified veterans to pursue state government employment. Amendments to § 19–6–102(a) since its enactment in 1890 support such an interpretation.

The veteran's preference statute as originally enacted read in pertinent part:

In and upon each public department and work of the territory and cities and counties thereof, honorably discharged union soldiers and sailors shall be preferred for appointment and employment provided they possess the proper and necessary qualifications to the discharge of the duties and responsibilities of the position for which they apply and are equal to or superior to all other applicants for such positions.

1890 Wyo.Sess.Laws ch. 44, § 1. The text of the preference statute remained unchanged until 1945. In 1945, the Legislature amended the statute to include female veterans and widows of male veterans, to limit the preference to veterans of wars, and to include an additional preference for disabled veterans and widows. 1945 Wyo.Sess.Laws ch. 54, § 1. The 1969 Legislature broadened the statute's scope to include qualified veterans

of a "conflict." 1969 Wyo.Sess.Laws ch. 3, § 1.

The Legislature intended for the veteran's preference statute to give qualified veterans the benefit of a competitive advantage in the state hiring process. By giving them an advantage over equally qualified nonveteran job candidates, the statute encourages qualified veterans to seek state employment. The state confers the benefit granted by § 19–6–102(a) and fully satisfies the legislative purpose behind the statute by giving preference only to veterans who are initially seeking state employment. Giving a preference to veterans who are pursuing a transfer or promotion within the state government in no way advances the legislative purpose behind § 19–6–102(a).

The Legislature's failure to alter or amend the language of § 19–6–102(a), despite the Department of Administration and Information's practice of giving the preference to veterans only when they are initially applying for state employment, supports our interpretation. Pinther cites no authority indicating that the state has ever given the veteran's preference outside the initial employment application process. The Legislature has not amended the statute to clarify when the state should give the preference. The Legislature's inaction regarding the application of § 19–6–102(a), thus, indicates its acquiescence to the state's practice of restricting the giving of the veteran's preference to initial applications for government employment. *Tenneco Oil Company*, 694 P.2d at 99.

The veteran's preference contained in § 19–6–102(a) does not extend to a qualified veteran who is a state employee seeking a transfer to another state agency. The personnel administrator correctly interpreted the personnel rules and § 19–6–102(a), and he correctly applied them to Pinther's case. His conclusions of law were in accordance with law, and his actions were not arbitrary, capricious, or an abuse of discretion. Section 16–3–114(c)(ii)(A).

Because the veteran's preference issue is dispositive, we will not address the issues

relating to qualifications and scored examinations under § 19–6–102(c).

Affirmed.